(text box: 1)`
 NO. 5-00-0525

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

A.G. EDWARDS, INC., ROBERT D. )  Appeal from the

MAURER, BRENT A. WILHELM, and )  Circuit Court of

GARY W. HENCY, )  St. Clair County.

)

     Petitioners-Appellees, )

)

)  No. 00-MR-117

)

THE SECRETARY OF STATE, THE )

DEPARTMENT OF SECURITIES OF THE )

STATE OF ILLINOIS, )  Honorable

)  John M. Goodwin, Jr.,

     Respondent-Appellant. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE MAAG delivered the opinion of the court: 

A.G. Edwards, Inc. (A.G. Edwards), Robert D. Maurer, Brent A. Wilhelm, and Gary W. Hency (collectively petitioners) filed a motion to quash the subpoenas 
duces tecum
 directed against them by the Secretary of State, the Department of Securities of the State of Illinois (respondent).  The subpoenas, issued May 5, 2000, as part of a routine audit of A.G. Edwards' Waterloo, Illinois, office, sought personal banking information from Maurer, Wilhelm, and Hency.  Respondent filed a motion to enforce the subpoenas on June 1, 2000.  The circuit court held a hearing and on July 25, 2000, sustained the motion to quash the subpoenas.  Respondent filed a timely notice of appeal.

The relevant facts are as follows.  A.G. Edwards is the parent corporation of A.G. Edwards & Sons, Inc., a broker/dealer.  A.G. Edwards maintains an office located in Waterloo, Illinois, for the purposes of conducting a securities business and providing investment services.  The Waterloo office is a satellite office of A.G. Edwards' Belleville branch office.  A.G. Edwards employs Maurer, Wilhelm, and Hency as salespersons.

On May 5, 2000, each petitioner received a subpoena 
duces tecum
 issued by respondent pursuant to the Illinois Securities Law of 1953 (Securities Law) (815 ILCS 5/1 
et seq.
 (West 2000)), directing A.G. Edwards' Waterloo office to produce specified bank records for "any and all bank accounts in which A.G. Edwards & Sons, Inc.[,] commission checks are deposited" for Maurer, Wilhelm, and Hency (salespersons).  Specifically, respondent sought copies of all bank statements, copies of all check registers, copies of all canceled checks, and copies of all deposit slips for the salespersons for the previous two years, commencing May 4, 1998.  The subpoenas required petitioners to produce personal financial information at respondent's office in Chicago, Illinois, within four days of the service of the subpoenas.  Respondent agreed that some of these accounts were held with the individual salesperson's respective spouse.  Additionally, respondent admitted that it had no reason to believe that the individual salespersons had engaged in any improper conduct.  The personal banking information that respondent had subpoenaed was requested as a routine audit.  

Petitioners filed a motion to quash the subpoenas.  Petitioners alleged that the subpoenas were so broad and invasive "as to constitute an invasion of the *** brokers' [salespersons'] fundamental rights of privacy."  Additionally, petitioners claimed that respondent had not demonstrated any cause or justification for such a pervasive invasion of privacy.

On May 17, 2000, petitioners submitted the affidavit of Brian Underwood, director of compliance for A.G. Edwards & Sons, Inc.  Underwood's affidavit stated that he had been employed with A.G. Edwards & Sons, Inc., since 1984 and that his job responsibilities have been exclusively with respect to litigation and compliance functions.  Underwood stated that due to his work experience, he had become familiar with the practices of the Securities and Exchange Commission, the National Association of Securities Dealers Regulation, Inc., the various exchanges of which A.G. Edwards & Sons, Inc., is a member, and the state regulatory agencies responsible for monitoring the activities of broker/dealers such as A.G. Edwards & Sons, Inc.  Underwood  claimed as follows: "During my 16½ years in the securities industry, I am not aware of a single instance in which any regulatory organization has requested the personal financial records of any Edwards' broker [salesperson] as part of a routine audit or investigation, other than the *** respondent's request that is the subject of the motion to quash."  Additionally, Underwood stated that before this particular request was made, respondent had never requested the personal financial records of any A.G. Edwards Illinois broker as a part of a routine audit.

A.G. Edwards filed a response to the subpoena on May 30, 2000.  It stated, "[N]either A.G. Edwards, Inc.[,] nor A.G. Edwards & Sons, Inc.[,] have [
sic
] in their [
sic
] possession, custody, or control any of the documents requested in the subpoena."  Further, it claimed, "[Neither A.G. Edwards nor A.G. Edwards & Sons, Inc., has] any obligation under the laws, rules, or regulations of the State of Illinois, any self-regulatory organization, the Securities Exchange Commission, or the National Association of Securities Dealers Regulation, Inc.[,] to maintain records pertaining to the personal bank accounts of any of its employees."

On June 1, 2000, respondent filed a motion to enforce the subpoenas, a response to the motion to quash, and a supporting memorandum.  Respondent argued that section 11(D)(1) of the Securities Law (815 ILCS 5/11(D)(1) (West 2000)) authorized it to issue subpoenas during an audit if the information is relevant and that the requested records were relevant to the audit of the Waterloo office.  Respondent further argued that section 11(D)(1) allows it to require the production of any books and records for audit purposes.  

Petitioners filed a memorandum in opposition to respondent's motion to enforce the subpoenas.  They argued that the Securities Law was unconstitutional as applied to them, thereby violating their rights to privacy and due process.  Petitioners claimed that they had a right of privacy in their bank records and that the subpoenas were an unreasonable invasion of that right.  Additionally, petitioners contended that the administrative investigation in the instant case was arbitrary, in excess of statutory authority, and undertaken for an improper purpose.  Thus, petitioners claimed that it was a violation of due process.  Petitioners also claimed that respondent did not have the authority to subpoena the personal bank records because the information was not relevant to discovering any violations.

The court conducted a hearing on July 12, 2000.  Susan LaRussa, an auditor for respondent, testified that she audited A.G. Edwards' Waterloo office on May 4 and May 5, 2000.  Although the salespersons and Robert Vaught, the compliance officer for the area, gave her most of the books and records that she requested, she was told that she would not be able to review the salespersons' personal bank records.  LaRussa stated that individual checking account information was subpoenaed because A.G. Edwards' Waterloo satellite office did not maintain a business account.  LaRussa testified that all revenue received by the Waterloo office was deposited into a "sweep account."  Each night, the money deposited into the sweep account was transferred into an account maintained by A.G. Edwards' main office in St. Louis, Missouri.  Each salesperson then received a commission check or a paycheck from A.G. Edwards that was made payable to the individual salesperson.  Each salesperson stated that he deposited his check into his personal checking account.  LaRussa admitted that she did not attempt to obtain any information from the St. Louis office or the sweep account.  She also agreed that she was not denied access to the Waterloo office sweep account or the records in St. Louis.  Instead, LaRussa stated that if the salespersons wanted to avoid divulging personal banking information, they should have created a business account.  LaRussa claimed that she needed the personal banking information in order to determine who the salespersons were making their checks out to.  She claimed that because the checks from A.G. Edwards are considered security commission checks, respondent has the authority to look at the account that the commission check is deposited into because it is security-related.  When reviewing personal checking accounts, LaRussa looks for "repetitious names [and] entities that checks have been made out to."  She stated that she looks for unregistered securities or "selling away."  LaRussa explained that "selling away" occurs when a salesperson is registered with one broker/dealer and "selling away" another broker/dealer's products.  LaRussa explained that "selling away" is illegal.  She stated that salespersons can only sell the products that they are registered to sell with their broker/dealer.  When reviewing personal checking accounts, LaRussa is also looking for instances where the personal checking account is made out in the broker/dealer's name.  For example, if a check is printed in the name of ABC Company in care of the salesperson's name, the salesperson can deposit the check into his personal checking account because that is the name that is printed on his personal checking account.  LaRussa stated that this type of account is not allowed because the salesperson can deposit the check into his personal checking account.

Kirby Kitner, senior auditor for respondent, testified that he had worked for respondent since April 1989.  Kitner stated that his primary duty is to oversee field auditors.  Kitner explained that he attempts to keep the auditors consistent in their application, reviews, and examinations.  He reviews the auditors' findings and discusses potential action that respondent might take.  Since 1996, respondent's audit policy has included reviewing bank records used directly or indirectly in the operation of the office.  This included any account into which a commission check or paycheck was deposited.  If the business has an operating account, respondent would not request the salesperson's personal account.  Kitner's explanation of what respondent looks for in the personal bank accounts was virtually identical to LaRussa's explanation.

Underwood testified that petitioners did not maintain business accounts.  In fact, Underwood stated that petitioners were not permitted to maintain a business account because all deposits received by the office are deposited into a sweep account and each night they are "swept to the home office bank account."  Additionally, all of the expenses had to be submitted to the St. Louis office for payment.  Underwood testified that the records that would show the operating expenses of the office and the business expenses of the individuals were records of A.G. Edwards and were available.

In written closing arguments, respondent claimed that it had the authority, pursuant to the Securities Law, to conduct audits and issue subpoenas during the course of an audit.  Further, respondent argued that the requests in the subject subpoenas were relevant, material, and reasonable.  Respondent claimed that bank records for the personal accounts might expose violations of the Securities Law.  Respondent stated that deposit slips might reveal "selling away," fee-splitting or the sharing of commissions, the diversion of customer funds, or the commingling of funds. 

Petitioners, in their written closing arguments, argued that the subpoenas violated  petitioners' rights to privacy and were not within respondent's statutory authority.  Petitioners also claimed that there was no evidence of impropriety by the Waterloo office, and they claimed that the information sought in the subpoenas was available to respondent through A.G. Edwards' home office records.

The circuit court entered an order on July 25, 2000, sustaining petitioners' motion to quash the subpoenas and denying respondent's motion to enforce the subpoenas.  The court determined that the subpoenas were unconstitutionally overbroad and violated the due process and privacy rights of the individual salespersons.  The court also stated that the undisputed evidence showed that during its audit of the Waterloo office respondent had found no evidence of impropriety.  Moreover, the court noted that the business records pertaining to the income and expenses of the Waterloo office were available at the home office of A.G. Edwards.  Respondent filed a timely notice of appeal.

Respondent claims that the circuit court erred by granting petitioners' motion to quash the subpoenas and denying respondent's motion to enforce the subpoenas.  Specifically, respondent claims that it was authorized to initiate the subpoenas pursuant to  sections 8(I)(3) and 11(D)(1) of the Securities Law (815 ILCS 5/8(I)(3), 11(D)(1) (West 2000)) and section 130.825(c)(1) of the Illinois Administrative Code (14 Ill. Adm. Code §130.825(c)(1) (2000)).  We disagree.

The appellate review of a motion to quash involving the circuit court's application of the law to uncontroverted facts is 
de novo
.  
People v. Buss
, 187 Ill. 2d 144, 204, 718 N.E.2d 1, 35 (1999).  In the instant case, the facts are undisputed; hence, the standard of review is 
de novo
.  See 
ESG Watts, Inc. v. Pollution Control Board
, 191 Ill. 2d 26, 29, 727 N.E.2d 1022, 1024 (2000).

Pursuant to section 2-1101 of the Code of Civil Procedure (735 ILCS 5/2-1101 (West 2000)), the circuit court may quash a subpoena for good cause shown.  The circuit court may decline to enforce an arbitrary, capricious, or oppressive administrative subpoena.  
People v. McWhorter
, 13 Ill. 2d 374, 380, 498 N.E.2d 1154, 1156 (1986).  In evaluating the propriety of the issuance of an administrative subpoena, the circuit court may consider the following:

"(1) the constitutionality of the statute; (2) whether the contemplated agency proceedings are included within the statutory authority; (3) the reasonableness of the demand; and (4) the relevance of the information sought."  
Department of Public Aid v. Kessler
, 72 Ill. App. 3d 802, 804, 391 N.E.2d 160, 162 (1979).

A subpoena is reasonable where (1) the document sought is 
relevant 
to the inquiry and (2) the specification of the document to be produced is adequate but not excessive for the purpose of the 
relevant
 inquiry.  
People v. Jackson
, 116 Ill. App. 3d 430, 435-36, 452 N.E.2d 85, 89 (1983).

Section 8(I) of the Securities Law states, in relevant part, as follows:

"I.  (1) Every registered dealer *** and investment adviser shall make and keep[,] for such periods, such accounts, correspondence, memoranda, papers, books[,] and records as the Secretary of State may by rule or regulation prescribe.  ***

***

(3) All the books and records referred to in paragraph (1) of this subsection I are subject at any time or from time to time to such reasonable periodic, special[,] or other audits, examinations, or inspections by representatives of the Secretary of State, within or without this State, as the Secretary of State deems necessary or appropriate in the public interest or for the protection of investors."  815 ILCS 5/8(I)(1), (I)(3) (West 2000).

Section 11(D)(1) of the Securities Law states that respondent can require the production of any books and records, papers, or other documents which respondent deems relevant or material to the inquiry.  815 ILCS 5/11(D)(1) (West 2000).

Additionally, section 130.825(c)(1) of the Illinois Administrative Code (14 Ill. Adm. Code §130.825(c)(1) (2000)) states as follows:

"(c) Every 
dealer
 registered by the Secretary of State shall preserve, for a period of not less than 3 years, the first 2 years in an easily accessible place:

(1) all check books, bank statements, cancelled checks[,] and cash reconciliations." (Emphasis added.)

Initially, we note that respondent states in its brief that the parties agree that petitioners are "salespersons" within the meaning of the Securities Law.  See 815 ILCS 5/2.9 (West 2000).  Hence, they are not "dealers" as contemplated in the Securities Law or the foregoing regulations, since the definition states, " 'Dealer' means any person, 
other than a salesperson
 ***, who engages *** as agent, broker[,] or principal[] in the business of offering, selling, [or] buying and selling *** securities ***."  (Emphasis added.)  815 ILCS 5/2.7 (West 2000).  We note that neither the plain language of the statutes nor the administrative regulation states that salespersons must preserve their 
personal
 checkbooks, bank statements, canceled checks, or cash reconciliations or that respondent would be able to periodically audit such information.  In fact, nothing in the foregoing statutes or regulation implies such a construction.  Consequently, the contemplated agency proceedings are not included within the statutory authority.

Moreover, the permissible scope of an administrative subpoena, and of any administrative demand for information or the production of documents, is measured by the relevance of the information sought to the problem under investigation.  
Heritage House of Glamour, Inc. v. Attorney General of the State of Illinois
, 179 Ill. App. 3d 336, 339, 534 N.E.2d 648, 650-51 (1989).  Here, the subpoenas requested personal financial information from the salespersons that was not reasonably related to a routine audit.  The circuit court properly held that the documents requested by the subpoena were irrelevant to a routine audit.

Respondent claims that even though it recognizes that citizens have a right to privacy in their bank records, this protection is only against unreasonable searches and seizures and not reasonable ones such as the request in the instant case.

The reasonableness of a seizure is determined by balancing the need for official intrusion against the constitutionally protected interests of the private citizen.  
People v. Garman
, 123 Ill. App. 3d 682, 684, 463 N.E.2d 158, 160 (1984).  "An administrative subpoena 'may be so 
unreasonable
 in its demands, or so indefinite and general in its terms, as to go beyond the statutory purpose for which the inquiry was authorized and amount to a "constructive search." ' "  (Emphasis added.)  
Heritage House of Glamour, Inc.
, 179 Ill. App. 3d at 339, 534 N.E.2d at 650-51 (quoting 
Scott v. Ass'n for Childbirth at Home, International
, 88 Ill. 2d 279, 298, 430 N.E.2d 1012, 1021 (1981)).  "[A] depositor reveals many aspects of her personal affairs, opinion, habit[,] and associations which provide a current biography of her activities.  Such a biography should not be subject to an unreasonable seizure by the State government."  
Jackson
, 116 Ill. App. 3d at 435, 452 N.E.2d at 89.

The Illinois Constitution recognizes an individual's basic rights of privacy with respect to his or her personal bank records.  Ill. Const. 1970, art. I, §6; 
Dufour v. Mobil Oil Corp.
, 301 Ill. App. 3d 156, 161, 703 N.E.2d 448, 452 (1998).  Section 6 of article I of the Illinois Constitution of 1970 was amended to provide as follows:  "The people shall have the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, seizures, invasions of privacy[,] or interceptions of communications by eavesdropping devices or other means."  Ill. Const. 1970, art. I, §6.  The constitutional commentary on section 6 points out that section 6 expands upon the individual rights which were contained in section 6 of article II of the Illinois Constitution of 1870 and in the United States Constitution.  Ill. Ann. Stat., 1970 Const., art. I, §6, Constitutional Commentary, at 522 (Smith-Hurd 1997).  Thus, the Illinois Constitution goes beyond federal constitutional guarantees by expressly recognizing a zone of personal privacy.  The protection of that privacy is stated broadly and without restrictions.  Even before the adoption of the Illinois Constitution of 1970, Illinois courts had protected individual privacy rights by demanding that a subpoena for books and records not be 
unreasonably 
broad or general in its terms (
People v. Lurie
, 39 Ill. 2d 331, 336, 235 N.E.2d 637, 640 (1968)) and that the documents sought be 
relevant
 to the investigation.  
People v. Reynolds
, 350 Ill. 11, 19-20, 182 N.E. 754, 757 (1932).  A person has a reasonable expectation that his or her private records will not be exposed to public view.  Similarly, a person has a reasonable expectation that he or she will not be forced to submit to a close scrutiny of his or her personal characteristics, unless for a valid reason.  Once a right to privacy is established, the court must determine whether a search and seizure is reasonable.  
In re May 1991 Will County Grand Jury
, 152 Ill. 2d 381, 390, 604 N.E.2d 929, 934-35 (1992).

On the other hand, the purpose of the Securities Law is to protect innocent persons who might be induced to invest their money in speculative enterprises over which they have little control.  
People v. Bartlett
, 294 Ill. App. 3d 435, 439, 690 N.E.2d 154, 156 (1998).  The Securities Law is paternalistic and must be liberally construed to better protect the public from deceit and fraud in the sale of securities.  
Bartlett
, 294 Ill. App. 3d at 439, 690 N.E.2d at 156.  Respondent is charged with the administration of the Securities Law.  815 ILCS 5/11(A)(1) (West 2000).  The Securities Law provides that all securities, except those exempt, must be registered prior to their offer or sale in Illinois.  815 ILCS 5/5 (West 2000). This allows respondent to review a proposed security before it is offered to the public and ensures that investors have sufficient information regarding the security to make an informed investment decision.  815 ILCS 5/5 (West 2000).  Additionally, every dealer and salesperson must be registered with respondent.  815 ILCS 5/8(A) (West 2000).  No dealer, issuer, or controlling person may employ a salesperson unless the salesperson is registered with  respondent.  815 ILCS 5/8(B), (C) (West 2000).  These requirements ensure that persons selling securities are qualified to do so.  The Securities Law also provides that it is a violation for any person to offer or sell any security except in accordance with the provisions of the Securities Law, to deliver to a purchaser any security required to be registered unless accompanied or preceded by a prospectus that meets the requirements of the Securities Law, to act as a dealer or salesperson unless registered as such, or to engage in any transaction, practice, or course of business in connection with the sale or purchase of securities that works or tends to work a fraud or deceit upon the purchase or seller.  815 ILCS 5/12(A), (B), (C), (F) (West 2000).  The Securities Law also provides that every registered dealer must keep accounts, correspondence, memoranda, papers, books, and records as required by respondent under its rules or regulations.  815 ILCS 5/8(I)(1) (West 2000).  All such books and records are subject at any time to reasonable periodic, special, or other audits, examinations, or inspections by respondent's representatives, within or without the State of Illinois, as respondent deems necessary or appropriate in the public interest or for the protection of investors.  815 ILCS 5/8(I)(3) (West 2000).  Pursuant to respondent's administrative regulations, every 
dealer
 registered by respondent must, among other things, preserve all checkbooks, bank statements, canceled checks, and cash reconciliations for at least three years.  14 Ill. Adm. Code §130.825(c) (2000).  For the purpose of all audits, respondent is empowered to require, among other things, the production of any books and records, papers, or other documents that respondent deems relevant or material to the inquiry.  815 ILCS 5/11(D)(1) (West 2000).

In balancing the need for official intrusion against the constitutionally protected interests of the private citizen, we find that the subpoenas 
duces tecum
 in the instant case violated petitioners' right to privacy.  Respondent sought the personal banking records of the salespersons in the Waterloo office because that office did not maintain a business account.  As we previously stated, some of these accounts were held jointly with the salespersons' spouses.  The testimony at the hearing demonstrated that some of the information sought by respondent was available from A.G. Edwards' home office in St. Louis.  Customer checks for transactions at the Waterloo office were placed into a sweep account and sent to the St. Louis office at the end of each business day.  Records of the deposits made by customers were available to respondent from deposit slips at the Waterloo office.  All expenses paid by the Waterloo office were also available for review by respondent.  Furthermore, information regarding each salesperson's commissions was available from the St. Louis office.  Although these records were readily available to respondent, it made no attempt to review any of those records.  Even so, respondent insists that it is necessary that it review personal financial information from each of the previously mentioned salespersons because each salesperson deposits his paycheck into a personal checking account.  Respondent claims that this means that each salesperson uses his checking account "directly or indirectly to operate securities business."  We note, however, that LaRussa failed to explain how creating an intermediate step such as setting up another account at the Waterloo office called a "business account" and depositing commission checks into that account rather than the  salesperson's personal bank account would lessen the opportunity for potential fraud or provide a greater level of information to respondent.  In fact, respondent's assertion that it would not have requested the information had a business account been maintained at the Waterloo office demonstrates that respondent's request was irrelevant and unreasonable.  Moreover, it is unreasonable to conclude that auditing personal banking information is necessary when "the business records relating to the income and expenses attributable to A.G. Edwards' Waterloo office are readily available at the St. Louis home office" but that it is not necessary if that information has been maintained at the Waterloo office.

Based on the foregoing considerations, we find that a salesperson's personal financial records should not be and are not required to be produced as part of a routine audit by respondent.  While there may be situations where such an invasive approach might be warranted, this case does not merit such an intrusion, in the absence of some indicia of fraud.  We must vigilantly guard against meritless meddling in the private lives of our citizens by inquisitive government actors who lack any reasonable justification for their demands.  The request for the personal financial records of the salespersons in the instant case was unreasonable and irrelevant and a violation of their right to privacy.

For the foregoing reasons, we affirm the circuit court's order sustaining petitioners' motion to quash the subpoenas and denying respondent's motion to enforce the subpoenas.

Affirmed.

CHAPMAN, Melissa, and RARICK, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 06/27/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.