In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2313

MICHAEL P. KLEIN,

*Plaintiff-Appellant,*

*v.*

GEORGE G. KERASOTES CORPORATION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois
No. 05-3215—**Jeanne E. Scott**, *Judge.*

ARGUED FEBRUARY 14, 2007—DECIDED SEPTEMBER 14, 2007

Before MANION, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* This case involves a dispute that arose when Michael P. Kerasotes was forced to sell his shares in a closely held family corporation, the George P. Kerasotes Corporation ("the Corporation"), back to the Corporation. Kerasotes, now replaced on appeal by his Chapter Seven bankruptcy trustee, Michael P. Klein, is trying to raise a number of claims in connection with that transaction, including that the sale was compelled, the valuation of the stock was misrepresented, and the price the Corporation paid for his stock was improperly discounted. The only question before this court is whether the Illinois Securities Law of 1953, 815 ILCS 5/1 *et seq.*,

applies to claims made by a seller of stock such as Kerasotes. Although we appreciate the policy arguments Klein has advanced in support of a negative answer, we conclude that the plain language of the statute encompasses both purchasers and sellers of stock. That means that Klein's claims against both the Corporation and its directors are barred by the statute of repose found in the Illinois law. Accordingly, we affirm the district court's grant of summary judgment.

**I**

According to Klein, until the Corporation offered to buy out Kerasotes's 1900 shares in April of 1995, he was unaware that he owned any stock in it. Thus, it was to his surprise that he received a letter from the Corporation informing him that he had stock, that the Corporation wanted to buy it back, and that it had valued the stock at $140 per share, for a total payout of $266,000. The Corporation as a whole valued itself at $7,850,000. Although that number meant that the per share value of its approximately 25,350 outstanding shares was $309.65, it discounted Kerasotes's shares 10% because they were non-voting shares. It then discounted the resulting figure by another 50% for non-marketability to arrive at the final price. Kerasotes swore that he had no choice but to take the Corporation's offer: "I was not allowed to negotiate any of these terms and was told that if I did not agree to them, I would receive nothing." (Presumably he would have retained the shares, but the record does not reveal what would have happened if he had refused.) He ultimately signed a Stock Redemption Agreement on May 23, 1995.

Some time after the sale, Kerasotes began to suspect that he had not received the full value of his shares. On February 9, 1999, as he was in the process of negotiating

a Transfer Agreement with the Corporation to transfer the assets that the Corporation owed him into a trust fund, Attorney Thomas Lamont sent a letter on Kerasotes's behalf asking about the propriety of the earlier Stock Redemption and demanding that the prior Agreement be renegotiated. The Corporation refused the renegotiation demand, but it agreed to make a lump sum payment into a trust of the remaining amounts.

In 1999, the defendants again told Kerasotes that the Corporation was worth $7,850,000. That representation was materially false. In fact, its value was in excess of $49 million as of 1998 (more than 600% higher than the value used for Kerasotes), and there is no evidence that it had slipped in the interim. Kerasotes did not learn about the true value of the company until September 24, 2003, when he received this information through discovery in a probate action.

On August 3, 2005, Kerasotes filed this diversity suit in federal court against Flora B. Kerasotes, Marjorie M. Kerasotes, Harvey B. Stephens, and Marshall N. Selkirk, each a director and trustee of the Corporation, and against the Corporation itself. (Two of these defendants share the same surname as the plaintiff's; when we refer simply to "Kerasotes," we mean Michael Kerasotes.) He asserted that all had breached their fiduciary duties to him and were liable for punitive damages; he also asserted common law fraud against the individual defendants. Finding that all theories of recovery fell within the Illinois Securities Law and that the five-year statute of repose contained in 815 ILCS 5/13(D) had run, the district court granted partial summary judgment against Kerasotes for all claims he had brought against the individual defendants and the Corporation. Kerasotes's complaint also raised claims against Attorney Lamont, which remain in the district court and, we were told, are stayed pending the resolution of this appeal. Because the district court

expressly found, pursuant to FED. R. CIV. P. 54(b), that there was no just reason for delay in entering a final judgment with respect to the individual defendants and the Corporation, Klein (by this time acting as Trustee) was entitled to appeal that decision immediately.

## II

Our review, of course, is *de novo*, *Atterberry v. Sherman*, 453 F.3d 823, 825 (7th Cir. 2006), and we have drawn all reasonable inferences in the light most favorable to Kerasotes, the non-moving party. The district court found that the defendants were entitled to summary judgment because it concluded that Kerasotes's claims were subject to the statutes of limitation and repose contained in the Illinois Securities Law, 815 ILCS 5/13(D). The three-year statute of limitations contained in § 13(D) of the Securities Law does not begin to run until "the party bringing the action has actual knowledge of the alleged violation of the Act." In addition to this rule, however, there is an additional two-year cap, meaning that the total period of repose expires five years after the violation, no matter when it was discovered. See 815 ILCS 5/13(D)(2).

The principal question on appeal is whether § 13(D) of the Securities Law applies to Kerasotes's claims. According to its terms, the Securities Law applies to all "action[s] . . . for relief under [the Securities Law] or upon or because of any of the matters for which relief is granted by [the Securities Law] . . . ." 815 ILCS 5/13(D). Kerasotes did not expressly invoke the Securities Law in his complaint; instead, he chose to allege common law claims of fraud, breach of fiduciary duty, and punitive damages. This is of little importance, however. As a procedural matter it is well established that plaintiffs in federal court have no duty to allege legal theories. See, *e.g.*, *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427-28 (7th Cir.

2005). If the complaint states a claim cognizable under the Securities Law, then recovery under that statute would be possible. In a diversity case like this one, the federal court must apply the applicable state statute of limitations. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751-52 (1980). Under Illinois law, which all agree governs here, claims that do not directly invoke the Securities Law may still fall within its statute of limitations. See *Tregenza v. Lehman Brothers, Inc.*, 678 N.E.2d 14, 15 (Ill. App. 1997). For example, in *Tregenza*, the Appellate Court of Illinois held that common law causes of action for breach of fiduciary duty, fraud, and negligent misrepresentation, when brought by a stock purchaser, fall within the statute of limitations provided by the Securities Law because "[they] are reliant 'upon . . . matters for which relief is granted' by the securities law." *Id.* Whether Kerasotes's claim amounts to an "action for relief under [the Securities Law] or upon or because of any of the matters for which relief is granted by [the Securities Law]" depends on what acts are encompassed within the Securities Law.

The Illinois Securities Law of 1953 is Illinois's version of the "blue sky" laws that exist in most states. "Blue sky" laws got their name from the case of *Hall v. Geiger-Jones Co.*, 242 U.S. 539 (1916), in which the Supreme Court lauded the passage of state securities laws to curb "'speculative schemes which have no more basis than so many feet of blue sky;' or, as stated by counsel in another case, 'to stop the sale of stock in fly-by-night concerns, visionary oil wells, distant gold mines, and other like fraudulent exploitations.'" *Id.* at 550. The Illinois Securities Law was motivated by the same concern. In the words of the Appellate Court of Illinois, "[t]he objective of the [Securities] Act is to protect innocent persons who may be induced to invest their money in speculative enterprises

over which they have little control . . . ." *People v. Bartlett*, 690 N.E.2d 154, 156 (Ill. App. 1998).

Section 12 of the Securities Law includes two anti-fraud provisions that made it a violation of the law for "any person" to "engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof," 815 ILCS 5/12(F), or to "employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly," 815 ILCS 5/12(I). According to the definitions section of the statute, "'[s]ale' or 'sell' shall have the full meaning of that term as applied by or accepted in the courts of this State, and shall include every contract of sale or disposition of a security or interest in a security for value." 815 ILCS 5/2.5.

The law also contains multiple remedial provisions. Section 13(A) provides a rescissionary remedy making "every sale of a security made in violation of the provisions of this Act . . . voidable at the election of the purchaser." 815 ILCS 5/13(A). Section 13(G) provides an injunctive remedy as follows:

> Whenever any person has engaged or is about to engage in any act or practice constituting a violation of this Act, any party in interest may bring an action . . . to enjoin that person from continuing or doing any act in violation of or to enforce compliance with this Act. Upon a proper showing, the court shall grant a permanent or preliminary injunction or temporary restraining order or rescission of any sales or purchases of securities determined to be unlawful under this Act . . . .

815 ILCS 5/13(G)(1).

Kerasotes's argument rests on the premise that a stock seller has no remedies under the Illinois Securities Law.

This is true under many state blue sky laws, including the Uniform Securities Act of 1956, which has been adopted by thirty-four states. The Uniform Securities Act makes only sellers—and not purchasers of securities— liable for fraud, as its language demonstrates: "Any person who . . . (2) offers or sells a security by means of any untrue statement of a material fact . . . [is] liable to the person buying the security from him . . . ." Unif. Securities Act § 410(a). Section 13(A) of the Illinois Securities Law is similar to the Uniform Securities Act to the extent that it makes the rescissionary remedy in § 13(A) available only "at the election of the *purchaser*." (Emphasis added.) As the Appellate Court of Illinois noted in *Space v. E.F. Hutton*, "It is evident by the very wording of section 13(A) that the remedies under the Illinois Blue Sky law are available only to purchasers of securities." 544 N.E.2d 67, 70 (Ill. App. 1989).

The district court was aware of the limitations of § 13(A), but it concluded that there was more than that to the statute. In finding that Kerasotes's claim was time-barred, it looked instead to § 13(G), which says that "any party in interest" may seek "rescission of any sales or purchases of securities determined to be unlawful under this Act." Relying at this point on the district court's decision in *Guy v. Duff & Phelps, Inc.*, 628 F.Supp. 252 (N.D. Ill. 1985), Kerasotes argues that notwithstanding this language, this section does not provide a remedy for purchasers.

There were a number of reasons why the plaintiff's suit was unsuccessful in *Guy*, and there is no reason why a district judge in the Central District of Illinois should have been bound by the reading of the statute suggested by one of her colleagues in the Northern District. That said, the *Guy* opinion raised several points that we think should be addressed. It thought that recognizing a remedy for sellers under the Securities Law would be tantamount to "granting a new private retrospective remedy to sellers"

that was not part of the statute. *Id.* at 263. Such a remedy, it believed, would create an anomaly: If sellers have a remedy under § 13(G), they would have the same rights as purchasers without having to comply with the procedural notice and tender requirements contained in §§ 13(A) and (B) (with which a seller could not possibly comply, since by definition after the sale it would no longer possess the securities). This was a change, the court concluded, that the Illinois legislature was unlikely to have made in such a cryptic way to this "meticulously worded statute." *Id.* at 264.

These observations have some force, but we think that they are trumped by two contrary factors that support the application of the Securities Law to the claims at issue here. First and foremost, the language of the statute makes it difficult to see how sellers of stock have no remedy under § 13(G). General policies cannot override the explicit language of a statute. Here, the express language of the relevant provisions of §§ 12 and 13 supply no justification for excluding stock sellers. Section 12 not only applies to "any person" but it also specifically prohibits activities in connection with "the sale or purchase" of securities. 815 ILCS 5/12(F) & 12(I). Similarly, § 13 targets the actions of "any person" and allows "any party in interest" to bring an action. To decide that sellers are not included under the Securities Law would require the court to disregard this plain language. *Cf. Grimhaus v. Comerica Securities, Inc.*, 2003 WL 21504185, *2 (N.D. Ill. 2003) ("The [Securities Law] allows any 'party in interest,' not just purchasers of securities, to bring a civil action to enjoin a violation of the Act. While section 5/13(G)(1) provides solely for prospective relief, it would allow *some* relief to the plaintiffs.") (emphasis in original; citation omitted).

Second, finding that stock sellers have a remedy under § 13(G) does not give them an undeserved break. The

greater problem would lie in a finding that they had no remedy. With respect to stock purchasers who seek a remedy under § 13(G), stock sellers have identical obligations. Moreover, a finding that the Securities Law affords no remedy would not bar sellers from bringing common law claims. If the Law indeed excluded them altogether, they presumably would be able to raise common law claims without having to meet any of the Securities Law's limits, like the statutes of limitation and repose. We see no indication that this is what the Illinois legislature was trying to do.

The rationale supporting a relatively short statute of limitations for stock purchasers applies equally to stock sellers. In *Tregenza v. Great American Communications Co.*, 12 F.3d 717 (7th Cir. 1993), this court addressed the reason why the one-year statute of limitations and the three-year statute of repose that apply to claims under the federal securities laws is triggered by inquiry notice:

> Three years is an age in the stock market. If the suspicious investor had a wide choice of times at which to sue within a three-year period rather than being required to sue no more than one year after the earliest possible date, the opportunistic use of federal securities law to protect investors against market risk would be magnified. These plaintiffs waited patiently to sue. If the stock rebounded from the cellar they would have investment profits, and if it stayed in the cellar they would have legal damages. Heads I win, tails you lose.

*Id.* at 722. Relying directly on this language, the Illinois Appellate Court concluded that common law actions premised upon matters for which the Securities Law grants relief fall within its statue of limitations. See *Tregenza*, 678 N.E.2d at 15.

We have noted before that "[i]f the investor can wait before selecting the relief he wants, he can shift all of the ordinary investment risk to the defendant. If things turn out well, the investor will keep the gains and still demand as damages the difference between the prices of the stock and its market value on the day of the transaction; if things turn out poorly the investor will demand rescission." *Jordan v. Duff & Phelps, Inc.*, 815 F.2d 429, 440 (7th Cir. 1987). This reality is no less true for sellers, who have precisely the same reasons for wanting wide latitude in choosing when to file their actions—the desire to transfer risk to the purchaser. This rationale supports a reading of the statute under which the same statute of limitations applies to both parties in a securities transaction.

Finally, Kerasotes's argument that we should toll the five-year period of repose because the fraud was ongoing is unavailing. A period of repose cannot be further tolled under Illinois law; a repose statute "terminate[s] the possibility of liability after a defined period of time, regardless of a potential plaintiff's lack of knowledge." *Cunningham v. Huffman*, 609 N.E.2d 321, 325 (Ill. 1993). Because a "statute of repose is triggered by the 'act or omission or occurrence' causing an injury, rather than by the . . . discovery of the injury," *id.*, the time that Kerasotes had for filing his suit began to run from the day when he sold his stock. For this purpose, it is noteworthy that he was aware by at least February 9, 1999, that the defendants had potentially committed fraud. Had he promptly filed his lawsuit then, he would have been within the five-year period of repose even though his discovery took place after the initial three-year statute had run. He did not, however. We conclude that the district court correctly ruled that Illinois law now bars his suit against these defendants.

We therefore AFFIRM the judgment of the district court.

No. 06-2313                                                            11

A true Copy:

    Teste:

 

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*