FOURTH DIVISION
March 18, 2010

No. 1-09-1222

| | | |
|---|---|---|
| TIMOTHY J. CARPENTER, MERVIN G. SCHAEFER, JAMES P. MALONEY, HENRY JACKSON, DAVID REINDL, HENRY C. HESS, DAVID FALLDORF, and JANE P. KOTH, | )) )) )) )) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellees, | ) ) | No. 08 L 006480 |
| v. | ) ) | |
| EXELON ENTERPRISES COMPANY, LLC, and EXELON CORPORATION, | ) ) | Honorable Brigid Mary McGrath, Judge Presiding. |
| Defendants-Appellants. | | |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

This matter appears before this court on interlocutory appeal to consider a question certified by the circuit court, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).

Plaintiffs, Timothy J. Carpenter, Mervin G. Schaefer, James P. Maloney, Henry Jackson, David Reindl, Henry C. Hess, David Falldorf, and Jane P. Koth, were formerly minority shareholders of InfraSource, Inc., a Delaware corporation (InfraSource). InfraSource's majority and controlling shareholder was defendant Exelon Enterprises Company, LLC, a subsidiary of defendant Exelon Corporation. Both entities were Pennsylvania corporations, with their principal places of business in Illinois, and they are hereinafter referred to as Exelon Corp. or Exelon Enterprises, and/or collectively as "Exelon." In 2003, Exelon divested itself of most of its interest in InfraSource by entering into a merger agreement with a third party and directly

acquiring InfraSource's remaining business units. As part of this transaction, the minority shareholders each received a *pro rata* share of the net proceeds of the merger and acquisition of InfraSource's assets.

The plaintiffs filed the instant suit against Exelon in 2007, asserting that the defendants abused their position as majority shareholders of InfraSource in such a way that the rights of the minority shareholders were violated and their interests were not fairly represented in the merger and sale transactions. Exelon filed a motion to dismiss this suit on the grounds that it was barred by the three-year statute of limitations contained in the Illinois Securities Law of 1953 (815 ILCS 5/13(D) (West 2008)). The trial court ultimately denied Exelon's motion to dismiss, determining that the Illinois Securities Law limitations period was inapplicable and the plaintiffs' suit was therefore timely filed within the residual five-year limitations period found in section 13–205 of the Code of Civil Procedure (Code) (735 ILCS 5/13–205 (West 2008)). However, the trial court did stay further proceedings and certified the issue of the appropriate statute of limitations for review on interlocutory appeal. For the reasons that follow, we answer the certified question in the negative.

## I. BACKGROUND

The plaintiffs filed their initial complaint against Exelon in May of 2007. The plaintiffs alleged that they were among a number of minority shareholders in Infrasource, with Exelon controlling the remaining 97% of shares as the majority shareholder. In 2003, Exelon decided to divest itself of its stake in Infrasource. The plaintiffs' initial complaint generally alleged that Exelon accomplished this goal through a series of transactions as part of a merger and sale

agreement. In essence, Infrasource would be merged with another corporation formed for the purposes of this transaction. Some of the business units and assets of the resulting corporation would be sold to Exelon itself, with the remainder being sold to a third party, GFI Energy Ventures (GFI). When all of the transactions were completed, InfraSource would continue on as a new entity and all of its former shareholders, including the plaintiffs, would be paid a *pro rata* share of the net proceeds.

Because Exelon owned the vast majority of InfraSource shares, it voted those shares in favor of this plan and the various transactions were completed in late 2003. The plaintiffs thereafter brought the instant lawsuit in 2007, essentially asserting that Exelon structured the transactions in such a way that the minority shareholders were mistreated and were not adequately compensated for their InfraSource shares. More specifically, the plaintiffs pled causes of action for breach of fiduciary duty, civil conspiracy, fraud, negligence, and negligent misrepresentation. The plaintiffs sought to recover damages, including the difference between the fair market value of their shares and what they actually received.

Exelon moved to dismiss the plaintiffs' complaint on the grounds that it was not timely filed. Specifically, Exelon argued that because the complaint was based upon matters for which relief was granted under the Illinois Securities Law, it was barred by the three-year statute of limitations contained in that law. The plaintiffs did not respond to Exelon's motion, choosing instead to voluntarily dismiss their initial complaint on November 19, 2007.

In July of 2008, the plaintiffs refiled their action with an amended complaint. The amended complaint contained additional detail regarding the plaintiffs' allegations and Exelon's

purported activities. Among other things, the plaintiffs generally alleged that: (1) the price that Exelon Enterprises paid for those InfraSource business units not sold to GFI was artificially low, (2) Exelon Enterprises alone received a share of preferred stock that entitled it to benefits not adequately shared with the minority shareholders, (3) Exelon Enterprises agreed to purchase a minimum amount of services from GFI in the years following the transaction at an artificially low price, and (4) Exelon appointed a biased special committee to examine these transactions and protect the rights of the minority shareholders.

While the amended complaint contained more factual detail, it explicitly stated fewer individual causes of action. The complaint dropped any claims for fraud or misrepresentation, and instead pled only a single count of breach of fiduciary duty and one of civil conspiracy against Exelon Enterprises and one count each of aiding and abetting a breach of fiduciary duty and civil conspiracy against Exelon Corp. Indeed, the complaint contained an explicit statement that it purported to be brought under Delaware law and did "not allege that defendants' conduct constituted a violation of the Illinois Securities Law." The plaintiffs continued to seek compensation for their damages, alleged to be in excess of $11 million.

Exelon again filed a motion to dismiss the plaintiffs' now refiled and amended complaint, pursuant to section 2–619(a)(5) of the Code. 735 ILCS 5/2–619(a)(5) (West 2008). Exelon asserted that, despite the plaintiffs' pleading efforts, their claims were still claims related to matters for which relief was granted under the Illinois Securities Law and it was therefore barred by that law's three-year statute of limitations. The trial court disagreed, finding that the suit was properly filed within the five-year limitations period found in section 13–205 of the Code. 735

No. 1-09-1222

ILCS 5/13–205 (West 2008).

Therefore, the court entered an order denying Exelon's motion to dismiss. However, the trial court also stayed further proceedings and certified the following question for interlocutory appeal, as the trial court found this issue involved a question of law upon which substantial ground for a difference of opinion existed:

> "Whether plaintiffs' claim that Exelon Enterprises Company, LLC, as majority shareholder of InfraSource, Inc., breached its fiduciary duties in connection with InfraSource, Inc.'s 2003 merger transaction is governed by the three year statute of limitations contained in the Illinois Securities Law of 1953, 815 ILCS 5/13(D)."

We granted Exelon's petition for leave to appeal, and we now answer the certified question in the negative.

## II. ANALYSIS

Supreme Court Rule 308 provides for a permissive appeal from interlocutory orders where the trial court has deemed that they involve a question of law as to which there is substantial ground for difference of opinion and where an immediate appeal from the order may materially advance the ultimate termination of the litigation. 155 Ill. 2d R. 308; *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 936-37 (2009). The standard of review in such an interlocutory appeal is *de novo*. *Brookbank v. Olson*, 389 Ill. App. 3d 683, 685 (2009).

5

A. Illinois Securities Law of 1953

"The purpose of the [Illinois] Securities Law is to protect innocent persons who might be induced to invest their money in speculative enterprises over which they have little control. *A.G. Edwards, Inc. v. Secretary of State*, 331 Ill. App. 3d 1101, 1110 (2002), citing *People v. Bartlett*, 294 Ill. App. 3d 435, 439 (1998). The law is paternalistic and is to be liberally construed to better protect the public from deceit and fraud in the sale of securities. *A.G. Edwards, Inc.*, 331 Ill. App. 3d at 1110; *Bartlett*, 294 Ill. App. 3d at 439. As such, section 12 of the Illinois Securities Law outlines a number of specific activities which violate the law, section 13 delineates the private and other civil remedies available for such violations, and section 14 outlines the possible criminal penalties available. 815 ILCS 5/12, 13, 14 (West 2008).

Of particular interest here are the provisions of section 13 relating to private and other civil remedies. Subsection 13(A) provides that "[e]very sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser," while subsections 13(B) and 13(C) outline the various notice and mitigation requirements that a purchaser must fulfill before electing the option of rescission. 815 ILCS 5/13(A), (B), (C) (West 2008). Amendments to this section in 1977 and 1978 added subsections 13(F) and 13(G) which, respectively, provide the Illinois Secretary of State or "any party in interest" a right to seek injunctive relief to enjoin any other party from "continuing or doing any act in violation of or to enforce compliance with this Act." 815 ILCS 5/13(F), (G) (West 2008); see Pub. Act 80–556, eff. September 8, 1977; see also Pub. Act 80–1421, eff. September 8, 1978.

Most important to this case is the language contained in subsection 13(D), which

No. 1-09-1222

provides:

"No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale; provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:

(1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or

(2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable." 815 ILCS 5/13(D) (West 2008).

The question certified by the trial court concerns the applicability of this limitation period to the plaintiffs' complaint.

7

### B. The Parties' Arguments

In the trial court, and again on appeal, the parties have focused their arguments on two separate lines of case law. We briefly address each in turn.

Exelon cites to a line of case law supportive of their position that the limitations period found in section 13(D) applies despite the plaintiffs' efforts to specifically disclaim any reliance on the Illinois Securities Law. Exelon first cites to this court's decision in *Tregenza v. Lehman Brothers, Inc.*, 287 Ill. App. 3d 108 (1997), in which we addressed common law causes of action for breach of fiduciary duty, fraud, and negligent misrepresentation brought by a stock purchaser against the seller of that stock. Despite the fact that the plaintiff did not plead the Illinois Securities Law and disclaimed any reliance upon the law, the *Tregenza* court reasoned that the plaintiff's claims were nevertheless reliant upon matters for which relief is granted by the Illinois Securities Law. It therefore found that "the three-year statute under the Illinois Securities Law, rather than the five-year limitations period under [section] 13-205 of the Code of Civil Procedure, applies to plaintiff's cause of action." *Tregenza*, 287 Ill. App. 3d at 110.

Exelon also cites to a more recent federal appeals court decision, *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669 (7th Cir. 2007). In that case, not only did the federal court apply the rule expressed in *Tregenza*, it also determined that the statute of limitations found in section 13(D) also applied to the claims of a stock *seller*, so long as those claims were reliant upon matters for which relief is granted by the Illinois Securities Law. *Klein*, 500 F.3d at 673. It is upon these cases that Exelon bases the contention that, despite the fact that plaintiffs did not plead the Illinois Securities Law and were sellers instead of purchasers of stock, their claims

nevertheless fall within the ambit of the law and are therefore barred by its three-year limitations period.

The plaintiffs disagree with this analysis and initially distinguish the *Tregenza* and *Klein* decisions. They distinguish *Tregenza* by noting that the plaintiff in that case was a stock purchaser and his claim was quite naturally contained within the statutory framework of the Illinois Securities Act. *Klein* is distinguished on the grounds that, while the plaintiff in that case was a seller of stock, he was still a willing seller. The plaintiffs assert that they were not so situated, because as minority shareholders of InfraSource they could do nothing to stop Exelon from exercising its rights as majority shareholder and effectuating the merger and sale transactions.

On this basis, the plaintiffs contend that this appeal is instead controlled by another line of case law. The plaintiffs begin by noting that because relevant sections of the Illinois Securities Law are modeled after sections of the federal securities law, Illinois courts will look to federal securities fraud case law to aid in interpreting the Illinois Securities Law. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 455 (2004). They then cite to a number of cases finding the federal securities law inapplicable to the facts of this case.

For example, the plaintiffs cite to *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 51 L. Ed. 2d 480, 97 S. Ct. 1292 (1977). In that case, the Supreme Court found that the federal securities law did not apply to the minority shareholders' claims that they were mistreated and underpaid for their shares after the majority shareholder chose to complete a merger and eliminate the minority's interest. In part, the Supreme Court's decision was based upon its

9

finding that the relevant federal securities law was not intended to apply to "instances of corporate mismanagement such as this, in which the essence of the complaint is that shareholders were treated unfairly by a fiduciary." *Santa Fe*, 430 U.S. at 477, 51 L. Ed. 2d at 494, 97 S. Ct. at 1303. The plaintiffs also cite more recent federal decisions which apply the reasoning of *Santa Fe* and explicitly hold that federal " 'securities fraud does not include the oppression of minority shareholders.... No more does securities fraud include unsound or oppressive corporate reorganizations.' " *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 572 (7th Cir. 2009), quoting *Isquith v. Caremark International, Inc.*, 136 F.3d 531, 536 (7th Cir. 1998).

Relying on these cases and the established practice of utilizing interpretations of federal securities law to aid in the analysis of the Illinois law, the plaintiffs contend that their claim is essentially one of minority shareholder oppression and is therefore not covered by the Illinois Securities Law or its statute of limitations. With the parties' positions so framed, they have exchanged arguments regarding specific aspects of the plaintiffs' complaint and the intricacy and applicability to the Illinois Securities Act of various rationales found in federal case law discussing federal securities law. However, we find that the outcome of this appeal actually depends on the resolution of a straightforward and fundamental question of statutory construction.

### C. Applicability of Subsection 13(A)

The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). All provisions of an enactment are to be viewed as a whole and each provision must be

interpreted in light of other relevant sections of the statute. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992). If the statute's plain meaning is ambiguous, then courts may examine external sources such as legislative history. *O'Loughlin v. Village of River Forest*, 338 Ill. App. 3d 189, 192 (2003).

As previously stated, the purpose of the Illinois Securities Law (a so-called "Blue Sky" law) is to "protect innocent persons who might be induced to *invest* their money in speculative enterprises over which they have little control." (Emphasis added.) *A.G. Edwards*, 331 Ill. App. 3d at 1110. As such, the only civil remedy originally provided by the law was the right of rescission found in subsection 13(A), a right that is notably available only to the *purchaser* of a security. 815 ILCS 5/13(A) (West 2008). In turn, subsections B and C of section 13 provide very specific notice and mitigation requirements that must be fulfilled prior to exercising the remedy of rescission. 815 ILCS 5/13(B), (C) (West 2008). Illinois courts have long recognized that "[i]t is evident by the very wording of section 13(A) that the remedies under the Illinois Blue Sky Law are available only to *purchasers* of securities." (Emphasis added.) *Space v. E.F. Hutton Co.*, 188 Ill. App. 3d 57, 61 (1989). Clearly, the plaintiffs' claims against Exelon do not arise out of their role as purchasers of securities, and subsection 13(A) would not provide them any relief.

## D. Applicability of Subsection 13(G)

Nevertheless, subsections 13(F) and 13(G) were added as amendments to section 13 in 1977 and 1978. Pub. Act 80–556, eff. September 8, 1977; Pub. Act 80–1421, eff. September 8, 1978. These two subsections provided additional relief to, respectively, the Illinois Secretary of

No. 1-09-1222

State and "any party in interest." 815 ILCS 5/13(F), (G) (West 2008). Both sections provide for similar relief, with subsection 13(G)(1) providing:

> "Whenever any person has engaged or is about to engage in any act or practice constituting a violation of this Act, any party in interest may bring an action in the circuit court of the county in which the party in interest resides, or where the person has his, her or its principal office or registered office or where any part of the transaction has or will take place, to enjoin that person from continuing or doing any act in violation of or to enforce compliance with this Act. Upon a proper showing, the court shall grant a permanent or preliminary injunction or temporary restraining order or rescission of any sales or purchases of securities determined to be unlawful under this Act, and may assess costs of the proceedings against the defendant." 815 ILCS 5/13(G)(1) (West 2008).

Exelon's entire argument relies upon the civil relief contained in subsection 13(G). Exelon essentially contends that this subsection clearly provides injunctive relief, as well as a right of rescission, to "any party in interest." Therefore, because the plaintiffs are each a party in interest, because subsection 13(G) provides them some form of relief, and because–whether they are specifically pled or not–subsection 13(D) applies to "claims for which relief is granted" by section 13, the plaintiffs' claims are time-barred by the Illinois Securities Law limitations period.

12

No. 1-09-1222

We must disagree.

Subsections 13(F) and 13(G) were added to section 13 via what was known as the "Illinois Business Take-Over Act." Pub. Act 80–556, eff. September 8, 1977; Pub. Act 80–1421, eff. September 8, 1978. In a section entitled "Findings and Purpose," the legislature stated that "[i]n recent years numerous companies have been subjected to take-over offers in which equity securities were acquired suddenly by means of tender offers***. The purpose of this Act shall be to protect the interests of Illinois securityholders of companies having a close connection with this State." Pub. Act 80–1421, §1.1, eff. September 8, 1978.[1] In light of this concern and this purpose, the legislature crafted a prospective remedy "to enjoin that person from continuing or doing any act in violation of or to enforce compliance with this Act." 815 ILCS 5/13(G)(1) (West 2008). While subsection 13(D) does also allow for the remedy of rescission, it clearly does so only in the context of enforcing that prospective remedy.

Indeed, while we are aware of no Illinois decisions addressing this issue, the federal courts have analyzed subsection 13(G). In *Guy v. Duff & Phelps, Inc.*, 628 F. Supp. 252 (N.D. Ill. 1985), the court explicitly considered whether subsection 13(G) provides a private retrospective remedy to sellers of securities. The court considered the purchaser-oriented nature of section 13, as well as the language of subsections 13(F) and 13(G), and concluded that subsections 13(F) and 13(G) should not be read to provide such a retrospective remedy because:

---

[1] We note that other provisions of the Illinois Business Take-Over Act were held to be unconstitutional in *Edgar v. MITE Corp.*, 457 U.S. 624, 73 L. Ed. 2d 269, 102 S. Ct. 2629 (1982).

13

"Even though both subsections thus authorize rescission, they were plainly designed simply to add prospective relief to the exclusively retroactive civil and criminal remedies always provided by the Blue Sky Law. Of course the Attorney General's only role under Law § 13 F can be to enjoin ongoing violations and enforce future compliance (for by definition that public official suffers no damages in the legal sense), and the following subsection's nearly identical language plainly seems intended only to grant like authority to private parties in interest. That prospective (rather than retrospective) thrust of both subsections is emphasized by their focus on 'continuing' or 'doing' violative acts and 'enforc[ing] compliance' with the Blue Sky Law. Recission [*sic*] under both those provisions is thus only an adjunct to injunctive relief, where rescission may be needed to render prospective compliance meaningful or even possible." (Emphasis omitted.) *Guy*, 628 F. Supp. at 263.

We agree with this reasoning. To read section 13 any other way would fail to consider the context in which subsections 13(F) and 13(G) were initially added and would make subsections 13(B) and 13(C) irrelevant. Specifically, if subsection 13(G) provides "any party in interest" a separate and unique retrospective right of rescission without any further restrictions, that right would presumably apply to both sellers and purchasers of securities. Such an

14

interpretation would then render meaningless the specific requirements contained in subsections 13(B) and 13(C), requirements that purchasers must fulfill before electing rescission as a remedy under subsection 13(A).

At this point, we must address the contrary holding in *Klein*, 500 F.3d at 673, in which the United States Court of Appeals for the Seventh Circuit found that subsection 13(G) did indeed provide such a retrospective remedy to sellers and also found that the limitations period contained in subsection 13(D) was therefore also applicable to that remedy. The federal court did so after acknowledging the purchaser-oriented nature of section 13 as well as the *Duff* decision. *Klein*, 500 F.3d at 672-73. The *Klein* court reasoned that the plain language of section 13 clearly provided sellers some form of remedy, and the shortened three-year limitations period contained in subsection 13(D) clearly applied to *any* matter for which relief is granted by section 13. The court then stated a policy rationale for its decision, borrowed from a discussion of federal law and applied to the Illinois Securities Law, in that:

> " 'If the investor can wait before selecting the relief he
>
> wants, he can shift all of the ordinary investment risk to the
>
> defendant. If things turn out well, the investor will keep the gains
>
> and still demand as damages the difference between the prices of
>
> the stock and its market value on the day of the transaction; if
>
> things turn out poorly the investor will demand rescission.'
>
> [Citation.] This reality is no less true for sellers, who have
>
> precisely the same reasons for wanting wide latitude in choosing

15

when to file their actions–the desire to transfer risk to the purchaser. This rationale supports a reading of the statute under which the same statute of limitations applies to both parties in a securities transaction." *Klein*, 500 F.3d at 674.

We are mindful that subsection 13(G) does provide a remedy to "any party in interest" and that remedy would naturally be available to sellers of securities, including the plaintiffs here. However, as discussed above, the entire thrust of the remedy contained in subsection 13(G) is *prospective* in nature and was originally created to protect parties in interest against the dangers involved in contemporaneous and sudden corporate take-over efforts. Pub. Act 80–1421, §1.1, eff. September 8, 1978. Moreover, we fail to see how the public policy concerns expressed by the *Klein* court would be addressed by construing subsection 13(G) to provide a separate right of retrospective rescission to *any* party, without the procedural safeguards explicitly required in subsections 13(B) and 13(C). Lastly, providing such a separate and unrestricted right of rescission to any party, including purchasers, would improperly render the entirety of subsections 13(B) and 13(C) irrelevant. *Bethania Ass'n v. Jackson*, 262 Ill. App. 3d 773, 777 (1994) (a "fundamental rule of statutory construction disfavors finding surplusage and requires courts to give each provision some reasonable meaning, if possible"). We therefore find that subsection 13(G) does not provide such a retrospective right of rescission to any party, including to sellers of securities such as the plaintiffs.

### E. Applicability of Subsection 13(D)

Having addressed this issue, we can now answer the operative question on appeal;

whether the limitations period contained in subsection 13(D) applies to the plaintiffs' claims. We find that it does not.

The three-year limitations period contained in section 13, by its own terms, only applies to "relief under this Section or upon or because of any of the matters for which relief is granted by this Section." 815 ILCS 5/13(D) (West 2008). By "this Section," the statute is referring only to section 13 itself. As the discussion above indicates, section 13 provides only for: (1) a retroactive right of rescission to purchasers under subsection 13(A), and (2) a prospective remedy of relief to the Illinois Secretary of State and "any party in interest" under subsections 13(F) and 13(G). 815 ILCS 5/13(A), (F), (G) (West 2008). Section 13 simply does not concern retroactive common law damages claims for breach of fiduciary duty brought by sellers of securities in general, or minority shareholders in particular. As such, the three-year limitations period contained in section 13(D) does not apply to claims of the plaintiffs' claims against Exelon Enterprises in this case.

## III. CONCLUSION

For the foregoing reasons, we answer the certified question in the negative. We remand the cause to the circuit court for further proceedings consistent with this opinion.

Certified question answered; cause remanded.

O'MARA FROSSARD, P.J., with O'BRIEN and GALLAGHER, JJ., concurring.