In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-3743

MILWAUKEE POLICE ASSOCIATION, et al.,

*Plaintiffs-Appellants*,

*v.*

EDWARD A. FLYNN, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Eastern District of Wisconsin
No. 2:15-cv-00809 — **Charles N. Clevert, Jr.**, *Judge*.

ARGUED FEBRUARY 14, 2017 — DECIDED JULY 12, 2017

Before ROVNER, WILLIAMS, and HAMILTON *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Daniel Vidmar, Christopher Manney, and Rudolfo Gomez, Jr. were discharged from the Milwaukee Police Department, for cause, by Police Chief Edward Flynn. Their benefits and pay stopped immediately. They appealed their terminations to the Board of Fire and Police Commissioners (the "Board"), which rejected their appeals and they were permanently discharged. The former officers claimed that their employment did not end when they were

discharged by the chief because they were entitled to employment until the conclusion of their appeals. Along with the Milwaukee Police Association, they brought this lawsuit alleging that they were denied constitutional due process and wages. The district court rejected their claims and granted judgment on the pleadings, finding that under Wisconsin law the former officers were not entitled to employment or pay and benefits between discharge by the chief and affirmation of discharge by the Board.

This appeal followed, and we affirm. Under Wisconsin law, the former officers had no property interest in employment once they were discharged for cause by Chief Flynn. They were provided a full and adequate appellate process, and their discharges were upheld in accordance with Wisconsin law. And, they were not entitled to wages for the period of time between their discharge and the conclusion of their appeal under Wisconsin law as they were not employed during this time. So we affirm the district court's judgment.

## I. BACKGROUND

Daniel Vidmar was employed as a police officer for the City of Milwaukee. On January 1, 2014, City Police Chief, Edward Flynn, ordered that Vidmar be discharged from employment, and his pay and benefits were terminated immediately. Vidmar appealed his termination to the Board of Fire and Police Commissioners (the "Board"), which conducted a trial on May 12 and June 17, 2014 and affirmed, concluding that his discharge was appropriate.

On October 15, 2014, Christopher Manney was discharged from his employment as a police officer by the City of Mil-

waukee by Chief Flynn, and his pay and benefits were terminated immediately. Manney appealed, and the Board conducted a trial from March 19 through March 23, 2015, and concluded that discharge was appropriate.

On December 3, 2013, Chief Flynn ordered that Milwaukee Police Department detective Rudolfo Gomez, Jr. be discharged from employment, and Gomez's pay and benefits were terminated immediately. As of the filing of this suit, Gomez's trial before the Board was incomplete.[1] However, the Board concluded that discharge was appropriate, and affirmed the discharge decision on July 24, 2015.

On July 6, 2015, the Milwaukee Police Association ("MPA"), the labor organization that represents certain non-supervisory Milwaukee police officers as a party in the Collective Bargaining Agreement with the City, with Vidmar, Manney, and Gomez (collectively the MPA and former officers are referred to as the "Officers") filed this lawsuit against Chief Flynn and the City of Milwaukee (collectively referred to as the "City") alleging a violation of procedural due process pursuant to 42 U.S.C. § 1983, and seeking unpaid wages pursuant to Wis. Stat. § 109.03. The Officers alleged that Wis. Stat. § 62.50(11) and (18) provided them with a legal entitlement to employment and "pay and benefits" after the police chief discharged them, continuing until the Board affirmed

---

[1]We note that public records and pleadings filed by the City indicate that Gomez's appeal before the Board was delayed because Gomez faced criminal charges for punching a handcuffed suspect while interrogating him (the same conduct that led to his discharge). *See Wisconsin v. Rodolfo Gomez Jr.*, No. 2013-CF-004962 (Milwaukee Cnty. Ct. Feb. 13, 2015). Gomez was eventually held criminally liable for this conduct. *United States v. Gomez*, No. 2:16-cr-00055-PP (E.D. Wis. June 16, 2016).

their discharges from the force. The relevant time periods of their alleged deprivations are January 1, 2014 - June 17, 2014 (Vidmar), October 15, 2014 - March 23, 2015 (Manney), and December 3, 2013 - July 24, 2015 (Gomez).

The district court granted judgment in the City's favor, finding that, once discharged by Chief Flynn, the Officers were not entitled to continued employment. Basing its order on the statutory interpretation and legislative history of § 62.50, the district court concluded that the Officers had no property interest in employment following discharge, and therefore, were not denied due process or owed additional wages. This appeal followed.

## II. ANALYSIS

### A. MPA has Standing to Sue

Before we address the merits, we need to address whether the MPA has standing to sue. Article III, § 2 of the Constitution limits the jurisdiction of federal courts to cases or controversies. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). The standing requirements imposed by the Constitution are three-fold; a litigant must show (1) that she "suffered a concrete and particularized injury that is either actual or imminent"; (2) "that the injury is fairly traceable to the defendant"; and (3) that a favorable decision will likely redress the injury. *Massachusetts v. EPA*, 549 U.S. 497, 517 (2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). That Vidmar, Manney, and Gomez have standing is not disputed. Each alleged that he suffered concrete financial injuries, namely deprivation of wages, and financial injuries are prototypical of injuries for the purposes of Article III standing. *See, e.g., United States v. Kerner*, 895 F.2d 1159, 1162 (7th Cir.

1990). However, it is less clear that the MPA, an organization that does not claim financial harm, has standing here.

The MPA has not pled any injury to itself, but instead asserts that it is a labor organization that has been recognized by the City of Milwaukee as the exclusive bargaining representative for certain officers in the Collective Bargaining Agreement with the city. It alleges that "the MPA possesses a tangible interest in knowing the law as it may impact its members, as well as ensuring that its members are afforded due process … ." However, an interest in the underlying law does not equal an injury. Neither can the MPA plead an injury to itself merely by pleading injury to some of its members. *See Milwaukee Police Assn'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 926–27 (7th Cir. 2013). Because the MPA does not plead that it suffered injury, it does not have standing on behalf of itself. *Id.*

While the MPA cannot claim standing on its own accord, it may still claim associational standing. *Id*. at 928. An organization has associational standing if "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id*. (*quoting United Food & Commer. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996)). The first two prongs of this test arise from Article III, and the third prong is prudential, meaning it may be abrogated or eliminated by statute. *Id.* The third prong of associational standing is "best seen as focusing on … matters of administrative con-

venience and efficiency, not on elements of a case or contro-
versy within the meaning of the Constitution." *United Food*,
517 U.S. at 557.

Assuming Vidmar, Manney, and Gomez are members of
the MPA, the first and second prongs of the associational
standing test are easily met. The former officers have standing
and the MPA's express purpose is to protect the employment
rights of Milwaukee police officers. Similarly, the prudential
requirement for associational standing is made simple where,
as here, the organization seeking standing is joined in suit
with its members who have Article III standing. We need not
weigh whether the relief requested requires the participation
of individual members, because the individual members are
joined and standing has been met. *See id*. at 546 (*citing Hunt v.
Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343
(1977)). So, for the purposes of this suit, the MPA has satisfied
the associational standing requirement.

## B. No Violation of Procedural Due Process

As threshold standing issues have been satisfied, we turn
to the merits of the appeal. We review the district court's grant
of judgment pursuant to Federal Rule of Civil Procedure 12(c)
*de novo*. *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016).
"To survive a motion for judgment on the pleadings, a com-
plaint must state a claim to relief that is plausible on its face.'"
*Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357–58 (7th Cir.
2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)). When assessing the facial plausibility of a claim, "we
draw all reasonable inferences and facts in favor of the non-
movant, but need not accept as true any legal assertions." *Id*.
at 358 (*citing Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th
Cir. 2014)). As in a Rule 12(b)(6) analysis, our review is limited

to the pleadings; however, the court "may take into consideration documents incorporated by reference to the pleadings" and "may also take judicial notice of matters of public record." *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012) ("When the plain meaning of a statutory term is unclear, outside considerations can be used in an attempt to glean the legislative intent behind the use of the term."); *accord Firstar Bank v. Faul,* 253 F.3d 982, 987–90 (7th Cir.2001).

This case does not arise out of factual disputes, but is instead based on a fundamental disagreement on the law. The Officers claim that they were deprived of procedural due process in violation of the Fourteenth Amendment of the Constitution. To demonstrate such a claim, the Officers must establish: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chi.*, 374 F.3d 554, 559 (7th Cir. 2004)). The first requirement the Officers must demonstrate is that their claim involves a protected property interest. *Id*. Absent a property interest, the Officers' claim fails.

Property interests are "not created by the Constitution, but rather are created and defined by existing rules or understandings that stem from an independent source such as state law." *O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015); *see also Price v. Bd. of Educ. of Chi.*, 755 F.3d 605, 607–08 (7th Cir. 2016). Employment, although generally at-will in Wisconsin, *see Forrer v. Sears, Roebuck & Co.*, 153 N.W.2d 587, 589–90 (Wis. 1967), has been established by state law as a property interest for police officers pursuant to Wis. Stat.

§ 62.50. *See Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 436 (7th Cir. 2004).

It comes as no surprise, however, that police officers are not entitled to indefinite employment. An officer's state-given property interest in employment is subject to revocation and it is at this intersection of Wisconsin State law—the line between the Officers' entitlement to a property interest and the state's revocation of the Officers' property interest—that we find the current dispute. The Officers allege that their protected interest in employment continued after the police chief discharged them and remained until the Board affirmed their dismissal. The City counters that the Officers had no property interest in employment once the chief discharged them. The question of whether the Officers had a protectable interest after the Chief Flynn's order of discharge is governed by Wis. Stat. § 62.50. So we begin with an analysis of that statute.

### a.  Statutory Interpretation (Wis. Stat. § 62.50)

Wisconsin Statute § 62.50 governs police and fire departments in "1st class cities" in Wisconsin.[2] The statute, which includes thirty-two subsections, maps out required procedures for Milwaukee police and fire departments, covering topics from the appointment of chiefs to the printing and distribution of regulations. *See* Wis. Stat. § 62.50(6), (4). Section 62.50 also governs employment protections for officers who are members of the Milwaukee police department force. *See* Wis. Stat. §§ 62.50(11)–(18). The Officers argue that it is this

---

[2] Milwaukee is a "1st class" city because it has a population of larger than 150,000. Wis. Stat. § 62.05(1)(a).

statute that provides them with a property interest in employment after being dismissed by the chief. But, we disagree.

Under Wisconsin law, "the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 681 N.W.2d 110, 124 (Wis. 2004). Interpretation begins with the statute's language, *id.*, and the language of the statute is to be read "in the context in which it is used." *Milwaukee Police Ass'n v. Flynn*, 801 N.W.2d 466, 471 (Wis. Ct. App. 2011) (quoting *Kalal*, 681 N.W.2d at 124). A statute is considered "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.* Therefore, interpretation of one subsection of a statute relies on the full context of that statute.

As required by Wisconsin law, our analysis starts with the language of the statute. Subsection § 62.50(11), titled "Discharge or suspension," provides:

> No member of the police force … may be discharged or suspended for a term exceeding 30 days by the chief … except for cause and after a trial under this section.

In claiming they have a property interest, the Officers argue that that the relevant analysis before the court can be boiled down to a strict reading of § 62.50(11), which mandates that a police officer cannot be discharged unless there is (1) cause;[3] and (2) a trial before the Board. They argue that this language dictates that Officers retain a protected interest in

---

[3] The Officers do not dispute that they were fired for cause.

employment until their trials on appeal. In making this argument, the Officers stress that it is crucial to follow the interpretive principle that the "specific trumps the general," and highlight that Wis. Stat. § 62.50(11) is the only subsection that specifically spells out what must take place before a discharge can occur. They assert that because § 62.50(11) permits discharge only after a trial, § 62.50 provides a system whereby the chief merely recommends discharge, and it is only the Board that can effectuate a discharge.

We find no support for the Officers' assertion that the police chief merely "recommends" a "preliminary" discharge under § 62.50(11). The Officers' allegation that the chief's "authority is limited to suspending a member's police powers pending a trial before the Board," is directly contradicted by the language of the statute. Section 62.50(11) plainly provides that an officer may be discharged "by the chief." There is no qualifier that leads us to believe that a discharge by the chief has no effect or is equivalent to suspension.

At first glance, it may be tempting to read § 62.50(11) to stand for the proposition that no discharge can be effected until "after a trial," but it is not simply § 62.50(11) that we must consider. The language of the statute must be considered as a whole and the "[c]ontext is important to meaning" as is "the structure of a statute in which the operative language appears." *Kalal*, 681 N.W.2d at 124; *see also Wittman v. Koenig*, 831 F.3d 416, 422 (7th Cir. 2016). Therefore, to decipher the legislative intent of § 62.50, we must evaluate all other relevant subsections of the statute to give context to the phrase "after a trial under this section."

Subsection § 62.50(13), titled "Notice of discharge or suspension; appeals" states:

> The chief discharging or suspending for a period exceeding 5 days any member of the force shall give written notice of the discharge or suspension to the member and, at the same time that the notice is given, shall also give the member any exculpatory evidence in the chief's possession related to the discharge or suspension. The chief shall also immediately report the notice of the discharge or suspension to the secretary of the board of fire and police commissioners together with a complaint setting forth the reasons for the discharge or suspension and the name of the complainant if other than the chief. Within 10 days after the date of service of the notice of a discharge or suspension order the members so discharged or suspended may appeal from the order of discharge or suspension or discipline to the board of fire and police commissioners … .

Subsections § 62.50(14)–(16) relate to proceedings before the Board and are titled "Complaint," "Notice of trial," and "trial," and § 62.50(17), titled "Decision" provides, in relevant part:

> If the board or panel determines that the charges are sustained, the board shall at once determine whether the good of the service requires that the accused be permanently discharged or be suspended without pay for a period not exceeding 60 days or reduced in rank. If the charges are not sustained the accused shall

be immediately reinstated in his or her former position, without prejudice.

Evaluation of these subsections indicate that discharge or suspension of a Milwaukee police officer has two distinct phases. The first phase is a discharge or suspension by the chief, which must be made for cause, as embodied in § 62.50(11). The second phase is elective, and provides for a trial and appeal of discharge or suspension, as provided in § 62.50(14)–(17). The second phase occurs *if* requested by the discharged or suspended officer pursuant to § 62.50(13) (that subsection is appropriately titled: "Notice of discharge or suspension; appeals."). The chronological structure of the tiered discharge or suspension process flows through the statute, and explains why § 62.50(11) mentions a "trial under this section"—because after discharge (or suspension) by the chief, a former officer is entitled to a trial and appeal before the Board pursuant to § 62.50(13)–(17). Such is the process officers are due under the statute. An officer may be discharged for cause, but he is guaranteed an opportunity to reclaim his property interest in employment on appeal after a trial. However, the statute is clear that a property interest is lost at the first juncture.

The Officers argue that because the term "permanently discharged" is not mentioned in the statue until § 62.50(17), this indicates the police chief cannot "permanently discharge" an officer. The Officers' proposed interpretation of § 62.50 is analogous to the structure of a report and recommendation under Federal Rule of Civil Procedure 72(b), where a magistrate judge's findings and recommendations take no effect until, and unless, signed by a district court judge. Here, the Officers suggest that discharge by the chief cannot take effect

until, and unless, affirmed by the Board after a trial. However, such a structure does not make sense here. Under the Officers' logic a police officer dismissed by the chief who does not seek an appeal pursuant to § 62.50(13) could never be "permanently discharged" and would remain employed indefinitely.[4]

Reading the statute to avoid such an absurd result, the term "permanent" in § 62.50(17) must be read as identifying that a discharged officer has no further recourse after a discharge is sustained by the Board, not as a term distinguishing between the type of discharge effectuated by the chief and sustained board.

Further, as correctly identified by the district court, the same subsection that uses the term "permanently discharged" also provides that if a Board does not sustain a dismissal or suspension, an officer is to be "reinstated" to his or her "former" position. Wis. Stat. § 62.50(17). These words clash with the Officers' interpretation of § 62.50, because if a discharge by the chief were merely a recommendation, there would be no need to *reinstate* an officer and there would be no *former position*. Applying the language of the statute to the facts pled by the Officers, all three were denied reinstatement on appeal. Because they were not reinstated, their former positions concluded on the date that they were discharged by the chief.

---

[4] The Officers contend, in a footnote, that because § 62.50(13) only allows for an appeal within 10 days of the chief's discharge, a discharge would become permanent should an officer fail to appeal within 10 days, thus avoiding any absurd results. This is not persuasive, as under the Officers' proposed scheme, an officer rightly discharged for cause by the chief, could potentially earn years of additional wages and benefits simply by filing a frivolous appeal. This would be an absurd result.

Crucial to our analysis, as it was to the district court below, is § 62.50(18). This subsection, titled "Salary during suspension," states:

> No member of the police force may be suspended under sub. (11) or (13) without pay or benefits until the matter that is the subject of the suspension is disposed of by the board or the time for appeal under sub. (13) passes without an appeal being made.

The Officers' complaint, which is the subject of the Rule 12(c) order on appeal, relied explicitly on § 62.50(18). The Officers alleged repeatedly that their property right to "pay and benefits" arose under § 62.50(18). However, on appeal the Officers did not mention this subsection in their brief, and at oral argument, they disavowed it. The Officers have rightly abandoned their argument that § 62.50(18) creates a property right for them. The plain text of § 62.50(18) directs payment of salary or wages only to officers who have been *suspended*, not discharged. This is significant, as it is the only subsection in § 62.50 that discusses suspension and excludes any mention of discharge. Wis. Stat. § 62.50(18). We trust that this omission was purposeful. The unambiguous language of the statute provides that "salary or wages for the period of time … preceding an investigation or trial" are owed only to suspended officers, not those discharged and the Officers here were discharged.

The Officers' proposed interpretation would render § 62.50(18) superfluous. If the statute necessarily provided officers with a property interest in employment and pay after discharge or suspension by the chief, § 62.50(18) would be unnecessary. We avoid interpretations that render provisions

superfluous. *River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 651 (7th Cir. 2011), *aff'd sub nom. RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012). Therefore, we find that § 62.50(18) does, in fact, create a property interest for *suspended* officers following suspension. However, the statute does not create any similar interest for discharged officers.

The legislative history behind § 62.50(18) is compelling. The plain text of the statute makes clear that discharged officers do not have a property interest in employment, but if there was any ambiguity in the statute itself, the legislative history of § 62.50(18) undeniably confirms the Officers lack of a property interest. Before 2008, Wisconsin Statute § 62.50(18) expressly stated that discharged as well as suspended officers were to receive pay "until the matter that is the subject of the suspension or discharge is disposed of by the board … ." However, legislative efforts began in the 2007-2008 legislative session to curtail this entitlement to discharged officers, and discharged officers were removed from the scope of § 62.50(18) by the enactment of 2007 Senate Bill 176. The state's Legislative Reference Bureau in its analysis of the bill, explicitly noted: "This bill removes the current law provisions relating to the payment of the salary of first class city police officers who are discharged."

The original version of SB 176, adopted in 2008, curtailed entitlement to pay and benefits for discharged officers before appeal only where the officer was charged with criminal conduct. However, the legislature again revisited the statute in 2009 and amended it to strike out any mention of discharged officers. This amendment, which was effective before any of the Officers were discharged, makes the legislature's intent to

revoke the Officers' property interest undeniable. We follow the direction of the legislator's clear intent and find nothing in Wisconsin law creates a property interest in employment for discharged officers. Without any property interest in their employment, the Officers' procedural due process claim must fail.

### C. State Wage Claim not Viable

Finding that the Officers were not employees of the Milwaukee Police Department after they were discharged by Chief Flynn, they are owed no wages pursuant to Wis. Stat. § 109.03.

### III. CONCLUSION

We AFFIRM the district court's judgment.