In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1815

ORGONE CAPITAL III, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

KEITH DAUBENSPECK, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-10849 — **Rebecca R. Pallmeyer**, *Judge*.

ARGUED SEPTEMBER 24, 2018 — DECIDED JANUARY 7, 2019

Before WOOD, *Chief Judge*, and EASTERBROOK and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Hype and reality can be at odds. This contrast arises often in postmortems on once-fashionable, now-failed investment securities. Hype can raise investors' hopes and, in turn, capital contributions. But when hype accelerates an investment's market value beyond its actual worth, a financial bubble is formed.

Fisker Automotive, Inc. was such a bubble, bursting in 2013. Plaintiffs, all purchasers of Fisker securities between 2009 and 2012, assert various claims against defendants, each of whom played roles in Fisker's early-stage financing, for allegedly misleading investors regarding Fisker's intrinsic value and imminent collapse.[1] Illinois law provides remedies when securities are sold by means of deceptive and fraudulent practices. But like any civil action, such claims must be timely filed. Our review does not explore the cause of or the defendants' alleged roles in Fisker's failure. Rather, we decide whether plaintiffs' claims fall within the Illinois securities laws, and if so whether their claims are time-barred by Illinois's three-year statute of limitations for securities-based claims.

## I

## A

In 2008, Fisker, a manufacturer of luxury hybrid electric cars, began attracting substantial financing as part of a trend in venture capital investments toward green energy technology start-ups. Investor enthusiasm was spurred by a $528.7 million loan to Fisker from the U.S. Department of Energy, which offered direct financial support to manufacturers of clean energy vehicles and components. Under the loan's terms, the Energy Department advanced Fisker $192 million.

---

[1] Plaintiffs-appellants are Orgone Capital III, LLC, David Burnidge, Lincolnshire Fisker, LLC, Kenneth A. Steele, Jr., and Robert F. Steel, and defendants-appellees are Fisker director Keith Daubenspeck, Fisker's venture capital patron Kleiner Perkins Caufield & Byers, Kleiner Perkins's managing partners Ray Lane and John Doerr, and Fisker's lead investment banker Peter McDonnell.

The venture capital firm Kleiner Perkins Caufield & Byers, a defendant here and a controlling shareholder of Fisker, assisted with negotiating and securing the loan to Fisker. Plaintiffs characterize Kleiner Perkins as "politically-connected" and a "pioneering titan" of Silicon Valley's venture capital industry, known for its "hugely successful early backing of companies."

Support from the federal government and Kleiner Perkins were not the only factors sparking investor interest. Celebrities including tech-industry rainmakers and A-list movie stars invested in Fisker's future. Media outlets from Wall Street to Hollywood reported on these luminaries' investment in and association with Fisker. Further fueling the excitement was Fisker's public competition with another emerging player in the electric vehicle market, Tesla, Inc.

In 2009, before sales began on its first generation of vehicles, Fisker announced that beginning in 2012 or 2013 its second generation of vehicles would be built in Delaware. Delaware agreed to chip in $21.5 million in state subsidies and Vice President Joe Biden and Delaware Governor Jack Markell participated in Fisker's media unveiling of this economic collaboration. Riding this wave of publicity and contributions, Fisker secured funding from additional venture capital firms and high net worth investors. These investors included the five plaintiffs at bar, who collectively purchased over $10 million in Fisker securities. By 2011, institutional and individual investors had poured $1.1 billion into Fisker, betting on its revenue potential and sustainability values.

Fisker's rise was rapid and highly publicized. So was its fall. In late 2011, Fisker began selling its flagship automobile.

By August 2012, it stopped all manufacturing operations to preserve cash, and in April 2013, Fisker laid off 75% of its remaining workforce. That same month, the U.S. Government seized $21 million in cash from Fisker to fulfill its first loan payment. In September 2013, the Energy Department put Fisker's remaining unpaid loan amount (approximately $168 million) out to bid at a public auction. In November 2013, Fisker filed for bankruptcy protection. The bubble had burst, and lawsuits followed.

B

On October 14, 2016, these plaintiffs filed a class action complaint against the defendants alleging fraud, fraudulent concealment of material information, breach of fiduciary duty, and negligent misrepresentation in connection with their purchases of Fisker securities. In the complaint, plaintiffs referenced a report released on April 17, 2013, by a private research firm, PrivCo, entitled "FISKER AUTOMOTIVE'S ROAD TO RUIN: How a 'Billion-Dollar Startup Became a Billion-Dollar Disaster'." A press release accompanying this PrivCo Report opined Fisker may go down as "the most tragic venture capital-backed debacle in recent history" due to "[t]he sheer scale of investment capital and government loan money." The PrivCo Report claimed this money and capital was "squandered so rapidly and with so little to show for it that the wreckage is breathtaking." According to plaintiffs, the PrivCo Report was supported by over 11,000 pages of documents exposing Fisker's imminent bankruptcy and malfeasant management. The PrivCo Report also highlighted production and financial data plaintiffs claim defendants concealed.

Plaintiffs' original complaint also describes several congressional hearings held in April 2013, one week after the PrivCo Report was published. Those hearings included testimony from both government and Fisker officials as part of a congressional investigation of Fisker's impending failure and the loss of $192 million in taxpayer funds.

The complaint details how the PrivCo Report and congressional hearings "brought to light" and "revealed the defendants' alleged wrongdoings. Plaintiffs pleaded "[t]he investigations by PrivCo and Congress revealed fraud and breach of fiduciary duties by, among others, [the defendants], in connection with [d]efendants' scheme to induce [p]laintiffs and the Class to purchase Fisker Automotive Securities while concealing from them material adverse information." Plaintiffs also alleged that confidential documents disclosed by PrivCo and Congress "revealed" the defendants "knew, but failed to disclose to plaintiffs and the Class, material information" concerning Fisker's production delays. Quoting the PrivCo Report, plaintiffs claim defendants "kept Fisker's troubles secret" and concealed Fisker's cash crisis and mismanagement while attracting new investors. Plaintiffs alleged that defendants secured over $800 million through fraud by disseminating materially false and misleading information to rescue Kleiner Perkins from its "bad bet" on Fisker.

Defendants moved to dismiss plaintiffs' complaint as barred by Illinois's three-year statute of limitations, 815 ILL. COMP. STAT. 5/13(D), for securities-based claims. Defendants argued the notices provided by PrivCo and Congress occurred in April 2013, but plaintiffs waited more than three years to file their complaint in October 2016. The district court

agreed and granted defendants' motion based upon plaintiffs' "straightforward factual disclosures" regarding the PrivCo Report and at the congressional hearings. To the district court, these disclosures demonstrated plaintiffs must at a minimum have known facts that, in the exercise of reasonable diligence, would have led to actual knowledge of their claims.

Although the district court dismissed plaintiffs' complaint as untimely, plaintiffs were granted leave to amend if they wished "to expressly contradict the court's conclusion about the dates that they learned of the facts that would lead them to their claims."

C

Plaintiffs accepted the district court's invitation and amended their complaint in three ways. First, they deleted all references to the PrivCo Report and congressional hearings. Second, they asserted Delaware rather than Illinois law controls this case under choice of law provisions within certain Fisker securities purchase agreements. Third, they claimed they first learned of the defendants' purported wrongdoing on December 27, 2013, after an action was brought in Delaware by separate investor plaintiffs against some of the same defendants here.[2]

Defendants moved again for dismissal and judgment on the pleadings under Federal Rule of Civil Procedure 12(b)(6) and (c). They argued plaintiffs' amended complaint suffers from the same infirmities as the original and that the lawsuit

---

[2] The Delaware plaintiffs raised the same core allegations as the plaintiffs here, relied on the same information derived from the PrivCo Report and congressional hearings, and were represented by the same counsel.

remains time-barred. The district court agreed, and concluded that plaintiffs' claims came under Illinois law, regardless of plaintiffs' contention that Delaware law should apply.

The district court also ruled that plaintiffs' amended complaint failed to cure the fundamental problem with their original complaint, which affirmatively pleaded plaintiffs had notice of their claims in April 2013. After the first dismissal, the court gave plaintiffs leave to amend to "expressly contradict" its finding that plaintiffs learned of facts in April 2013 that would lead them to their claims. But rather than rebut the court's finding, plaintiffs just deleted all references to the PrivCo Report or congressional hearings from their amended complaint. Because this information was not contradicted in the amended complaint, the court reaffirmed its previous conclusion that Illinois's three-year statute of limitations for securities law claims barred plaintiffs' action, and dismissed plaintiffs' complaint with prejudice.

## II

We review de novo a district court's order granting a Rule 12(b)(6) motion to dismiss based on the statute of limitations. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). We similarly review de novo a district court's grant of judgment under Rule 12(c). *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017); *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (noting that practical effect of addressing a statute of limitations defense in Rule 12(c) motion is same as addressing it in Rule 12(b)(6) motion).

Where a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss

the complaint on that ground. *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) ("[I]n the context of securities litigation, if a plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis."). In performing our review, we take the plaintiffs' factual allegations as true and give them the benefit of all reasonable inferences. *Whirlpool Fin. Corp.*, 67 F.3d at 608. We may also take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings. *Milwaukee Police Ass'n*, 863 F.3d at 640.

The district court dismissed plaintiffs' claims as precluded by Illinois securities law's three-year statute of limitations. On appeal, we decide whether that limitations period applies, and if so, whether it has expired.

A

A district court exercising diversity jurisdiction applies the statute of limitations of the forum state, *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007), in this case Illinois.

Plaintiffs argue otherwise. Despite bringing securities-based claims, they contend the Illinois securities laws do not govern their lawsuit. They argue choice of law provisions contained in some (but not all) of the Fisker securities purchase agreements they executed required them to pursue their claims under Delaware law. Plaintiffs posit that because they are precluded from any remedies under the Illinois securities law, they cannot be subject to its three-year statute of limitations, and thus that their lawsuit must be governed

by Illinois's five-year statute of limitations for "civil actions not otherwise provided for." *See* 735 ILL. COMP. STAT. 5/13-205.

Plaintiffs' argument is ambitious, but not supported by law. As an initial matter, choice of law provisions did not bind the plaintiffs. Nor do choice of law provisions automatically foreclose the application of a forum state's laws. Rather, choice of law issues may be waived or forfeited by declining to assert them in litigation. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("The choice of law issue may be waived … if a party fails to assert it."); *see also Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) (holding that choice of law is "normally" waivable). Plaintiffs were likewise free to waive the Delaware choice of law provisions they now invoke. Further, the Illinois three-year statute of limitations applies to all actions "brought for relief under [the Illinois securities laws] or upon or because of any of the matters for which relief is granted." 815 ILL. COMP. STAT. 5/13(D). Thus, "claims that do not directly invoke the [Illinois securities laws] may still fall within its statute of limitations," including Delaware common law claims, like those plaintiffs assert. *Klein*, 500 F.3d at 671 (citing *Tregenza v. Lehman Brothers, Inc.*, 678 N.E.2d 14, 15 (Ill. App. Ct. 1997)).

In *Tregenza*, an investor plaintiff raised the same types of claims as plaintiffs here—common law causes of action for breach of fiduciary duty, fraud, and negligent misrepresentation arising out of the purchase of securities. The Illinois Appellate Court affirmed the dismissal of the investor's claims and held that they triggered the three-year statute of limitations because "[they] are reliant 'upon … matters for which

relief is granted' by the Securities Law." *Tregenza*, 678 N.E.2d at 15 (quoting 815 ILL. COMP. STAT. 5/13(D)).

We applied the same reasoning in *Klein* to conclude the Illinois securities laws governed the plaintiff's claims. 500 F.3d at 672–74 (affirming dismissal of plaintiff's claims for common law fraud, breach of fiduciary duty, and punitive damages as untimely under the Illinois securities laws).[3] In *Klein*, we held that whether a plaintiff's claim amounts to an action for relief under the Illinois securities law, or upon or because of any of the matters for which relief is granted by the securities law, depends on what acts are encompassed within the securities law. *Id.* at 672; *see also* 815 ILL. COMP. STAT. 5/13(D); *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1176 (C.D. Cal. 2011) (interpreting same Illinois statute) ("The Court need not look past the plain language of the statute to conclude that the 'matters for which relief is granted' refers to the conduct giving rise to a suit rather than the procedural question of whether an [Illinois securities law] suit is allowed in a particular case.")

Illinois's securities laws expressly prohibit the types of misconduct alleged by plaintiffs and provide remedies therefor. Plaintiffs claim defendants concealed material information and made knowingly false statements regarding Fisker's operational and financial conditions in connection with the sale of Fisker securities. Such conduct is prohibited

---

[3] Before 2013, the Illinois securities laws contained a five-year statute of repose, which applied to any "action … brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section." *See* 2013 Ill. Legis. Serv. P.A. 98–174 § 13(D) (West). In deciding whether the former statute of repose applied to the claims in *Klein*, we interpreted the same statutes as here.

under Illinois securities laws sections 5/12(F) (prohibiting fraud and deceit in connection with the sale of securities), 5/12(G) (prohibiting the sale of securities by means of untrue or misleading statements), and 5/12(I) (prohibiting any device, scheme or artifice to defraud in connection with the sale of securities). *See* 815 ILL. COMP. STAT. 5/12. Section 13 of this statute provides remedies for the conduct prohibited in these statutes. Likewise, its three-year statute of limitations expressly applies to their violation. So under *Klein*, plaintiffs have pleaded acts encompassed within and governed by the Illinois securities laws, which are governed by its limitation period.

Plaintiffs contend that rather than *Klein*, *Carpenter v. Exelon Enterprises Co., LLC*, 927 N.E.2d 768 (Ill. App. 1 Dist. 2010), controls this case. *Carpenter* held that § 13 of the Illinois securities laws does not provide a remedy for common law claims for breach of fiduciary duty brought by sellers of securities. *Id*. at 774–77. Because the plaintiffs-sellers in *Carpenter* lacked a remedy under the Illinois securities laws, the Illinois Appellate Court ruled that the three-year statute of limitations did not govern their claims. *Id*. at 777. But where *Carpenter* and *Klein* separate—whether the Illinois securities laws provide a remedy for stock sellers—is of no value to plaintiffs. The lack of an available remedy in *Carpenter* was due to the *Carpenter* plaintiffs' status as stock sellers. Here, plaintiffs sue as purchasers of Fisker securities, not sellers. The Illinois securities laws expressly provide relief to securities purchasers. *See* 815 ILL. COMP. STAT. 5/13(A) (specifying that those who participated or aided in selling a security in violation of the Illinois securities laws are "joint and severally liable to the purchaser," including purchasers' attorneys' fees and expenses).

Plaintiffs' position also suffers from forum shopping problems because the outcome they propose would reward a stockholder who fails to bring suit in the appropriate state in a timely manner. To address this problem, plaintiffs cite *Ferens v. John Deere Co.* to show that forum shopping for a more favorable statute of limitations is permissible. 494 U.S. 516, 531 (1990) (applying Mississippi's six-year statute of limitations to Pennsylvania claims after Pennsylvania's two-year tort limitations period had expired). But here, unlike in *Ferens*, a more favorable statute of limitations law does not exist. Plaintiffs concede that had they initiated their lawsuit in Delaware under Delaware law, their claims would be subject to a three-year statute of limitations. Likewise, had plaintiffs initiated their lawsuit in Illinois under Illinois law, the same three-year limit would be applied. Plaintiffs have offered no authority to support their contention that by suing in Illinois under Delaware law, parties get two additional years to sue.

Plaintiffs cannot avoid Illinois's statute of limitations by encasing their common law claims in a Delaware husk. Because the Illinois securities law's three-year limitations period controls in this case, Illinois's residual five-year statute of limitations does not apply. *See* 735 ILL. COMP. STAT. 5/13-205 (restricting five-year statute of limitations to "civil actions not otherwise provided for"); *see also Tregenza*, 678 N.E.2d at 15 (holding that the plaintiff's action "is a cause otherwise provided for" under the Illinois securities law, and that five-year limitations period in § 5/13-205 is inapplicable) (internal quotations omitted). The remaining question is whether plaintiffs' lawsuit was timely filed.

B

Actions for relief under the Illinois securities laws must be brought within three years from the date of a security's sale. 815 ILL. COMP. STAT. 5/13(D). But if the party suing neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of the Illinois securities law, the three-year period to sue for Illinois securities law claims begins to run the earlier of:

> (1) the date upon which the party bringing the action has *actual knowledge* of the alleged violation of this Act; or

> (2) the date upon which the party bringing the action has *notice of facts which in the exercise of reasonable diligence would lead to actual knowledge* of the alleged violation of this Act.

815 ILL. COMP. STAT. 5/13(D)(1)-(2) (emphases added).

Fisker securities were last sold to these plaintiffs in 2012. Yet plaintiffs' amended complaint avers they did not know of facts concerning the defendants' alleged violations until after December 27, 2013, such that their October 14, 2016, original complaint was timely filed. In its final dismissal order, however, the district court found that the defendants' alleged fraud "was presented for the entire world to see no fewer than three times before October 14, 2013." Applying an "inquiry notice" standard, the district court determined that PrivCo's and Congress's April 2013 disclosures gave plaintiffs notice of their potential claims. These findings were not rebutted, and the district court concluded it was implausible that plaintiffs were first notified of facts leading to their claims later than April 2013.

Plaintiffs challenge the district court's application of inquiry notice to dismiss their claims. They argue the first clause of 815 ILL. COMP. STAT. 5/13(D)(2) regarding "notice of facts" means "actual notice of facts," not "inquiry notice." Plaintiffs note that "inquiry notice" does not appear in the statute. But plaintiffs' position encounters two problems. First, although the text of § 5/13(D)(2) does not include the phrase "inquiry notice," it also does not include "actual notice." Plaintiffs ask us to supplant one omitted term for another, which leads to the second problem: if we agreed with plaintiffs' proposed interpretation, what constitutes "actual notice of facts" would be indistinguishable from "actual knowledge," the triggering event contained in § 5/13(D)(1). Such a reading would render § 5/13(D)(1) redundant, which violates the surplusage canon of statutory construction. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 176 (2012).

In contrast, the inquiry notice standard is consistent with § 5/13(D) and the cases interpreting this statute. *Cf. Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (explaining that under "inquiry notice," a statute of limitations "begins to run when the victim of the alleged fraud became aware of facts that would have led a reasonable person to investigate whether he might have a claim"); *Allstate Ins. Co.*, 824 F. Supp. 2d at 1182 (holding § 5/13(D) "appears to be very close to the California inquiry notice standard," which "requires only that a party be on notice that an injury was 'caused by wrongdoing' before the statute begins to run.").

But here, we need not decide which notice standard applies because plaintiffs' suit is time-barred under the plain language of § 5/13(D). Applying the text of § 5/13(D) to this

case, plaintiffs must show they did not have notice of facts that, in the exercise of reasonable diligence, would lead to actual knowledge of the defendants' alleged violations on or before October 14, 2013. They have failed to do so. Plaintiffs' original complaint made more than fleeting references to the April 2013 PrivCo Report and ensuing congressional hearings. They repeatedly pleaded these publications "brought to light" and "revealed" the facts forming the bases of their lawsuit. The PrivCo Report's writing was not subtle. It characterized Fisker as "the most tragic venture capital-backed debacle in recent history" and alluded to fraud and breach of fiduciary duties as the cause of Fisker's "breathtaking wreckage." The PrivCo Report and congressional hearings did more than stir up the possibility of a legal action; they provided plaintiffs a detailed litigation roadmap.

Red flags were not limited to disclosures by PrivCo and Congress as provided in their original complaint. According to plaintiffs' amended complaint, in late 2011 "a scandal erupted concerning Solyndra, another green energy start up with DOE funding, and Fisker [] became a political issue given its similar ties to DOE, becoming the subject of negative stories on major news networks like ABC, CBS, and Fox, as well as major newspapers." The amended complaint continues that in early January 2012, Fisker executives notified investors that "DOE refused to resume funding Fisker." In February 2012, media reported that Fisker's "cash crunch" resulted in forced layoffs, in addition to reporting on Fisker's scaled back sales projections and automobile recalls. The same month, Fisker also informed its investors that it had become "a political football" and that its negative press was "a consequence of [] election year politics." In August 2012, Fisker's leadership wrote to stockholders explaining that

Fisker "has been under a media microscope" and was "the target of politically motivated PR attacks."

"Scandals," "negative stories," "cash crunches," product recalls, layoffs, "PR attacks," nationwide portrayal as a political scapegoat, and cancellation of crucial federal funding—all under the lens of a "media microscope"—are distressing facts for any stockholder. All of these signals occurred before April 2013 and were incorporated into plaintiffs' amended complaint.

Fisker was a sophisticated and speculative private equity investment. Among plaintiffs, the lowest total investment was over $350,000, and the highest over $7,500,000. Yet even an unsophisticated investor should have realized between late 2011 (when Fisker was correlated with Solyndra) and April 2013 (following the release of the PrivCo Report) that something was wrong. Even assuming plaintiffs shut themselves off from media, a simple internet search of "Fisker" to check on the status of their investment—as any reasonable investor would do—would have revealed these troubling facts. Plaintiffs counter that defendants were especially sophisticated and employed significant resources to conceal Fisker's problems. The ominous facts plaintiffs detail in their amended complaint undercut this assertion. Even if plausible, plaintiffs' assertion expired once PrivCo and Congress presented Fisker's flaws to the public. Defendants could no longer conceal wrongdoings because, as plaintiffs expressly concede, PrivCo and Congress "revealed" and "brought to light" such wrongdoings as early as April 2013.

Finally, plaintiffs contend the district court improperly construed allegations in their superseded original complaint as judicial admissions. *See 188 LLC v. Trinity Indus., Inc.*, 300

F.3d 730, 736 (7th Cir. 2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."). Plaintiffs insist that allegations in a superseded complaint—here, references to the PrivCo Report and congressional hearings—should be ignored.

An amended pleading does not operate as a judicial *tabula rasa*. "Under some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein." *Id*. In response, "the amending party may offer evidence to rebut its superseded allegations." *Id*. Consistent with this process, the district court granted plaintiffs leave to amend to rebut facts that they pleaded in their original complaint showing their awareness of the defendants' alleged securities violations more than three years before filing. The court provided plaintiffs the opportunity to expressly contradict the court's finding about when they learned of facts that would lead them to their claims. Rather than contradict those facts, plaintiffs simply deleted any references to them. A district court is not required to ignore its prior decision, or its findings supporting a dismissal and grant of leave to amend, where, as here, the findings are based upon undisputed public information plaintiffs themselves brought before the district court.

A district court may judicially notice a fact that is not subject to reasonable dispute because it: (1) "is generally known within the trial court's territorial jurisdiction;" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see also General Electric Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074, 1081 (7th Cir. 1997) (holding same). Here, the

district court considered the original complaint, as well as its 2017 opinion inviting plaintiffs to rebut their allegations of notice triggering the Illinois securities limitations period. "[I]f the finding taken from the prior proceeding is 'not subject to reasonable dispute,' then the court has satisfied the evidentiary criteria for judicial notice." *General Elec. Capital Corp.*, 128 F.3d at 1082; *see also Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017) ("Absent a claim that there is a plausible, good-faith basis to challenge the legitimacy of [a prior complaint]," the court is entitled to take judicial notice of a complaint and its contents). That the PrivCo report exists, the Congressional hearings transpired, and plaintiffs pleaded both facts in their original complaint is beyond "reasonable dispute." Accordingly, the district court permissibly considered these findings in its second and final dismissal of the plaintiffs' lawsuit.

## III

Plaintiffs' case concerns matters for which the Illinois securities laws grant relief, and therefore falls within its three-year statute of limitations. Plaintiffs' claims against the defendants accrued no later than April 2013, but they filed their complaint in October 2016. Because plaintiffs failed to bring this action within three years from the date their claims accrued, their lawsuit was untimely filed and appropriately dismissed.

AFFIRMED.