File 1/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B295998 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA117431) |
| v. | |
| VINCENT E. LEWIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge. Affirmed.

Robert Bacon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Amanda V. Lopez and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

A jury convicted defendant Vincent E. Lewis of first degree premeditated murder in 2012, and we affirmed the conviction in 2014. (*People v. Lewis* (July 14, 2014, B241236) [nonpub. opn.] (*Lewis*).)[1] In January 2019, defendant filed a petition for resentencing under Penal Code[2] section 1170.95 and requested the appointment of counsel. The trial court, relying on our prior decision in *Lewis*, found that defendant was ineligible for relief and denied the petition without appointing counsel or holding a hearing. Defendant appealed. For the reasons set forth below, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and two codefendants were tried for the murder of a fellow gang member. One of the codefendants allegedly fired the shots that killed the victim. The People prosecuted the case against defendant on three alternative first degree murder theories: direct aiding and abetting; aiding and abetting under the natural and probable consequences doctrine;[3] and conspiracy. The prosecutor argued to the jurors that the evidence could

---

[1] We have granted the Attorney General's request to take judicial notice of our 2014 opinion in *Lewis*, and defendant's request to take judicial notice of the record that was before us in the prior appeal (case No. B241236).

[2] Subsequent statutory references are to the Penal Code.

[3] Under the natural and probable consequences doctrine, a " 'person who knowingly aids and abets criminal conduct is guilty of not only the intended crime . . . but also of any other crime the perpetrator actually commits . . . that is a natural and probable consequence of the intended crime.' " (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

2

support a verdict under each murder theory and that they did not have to agree on the same theory to return a guilty verdict. The court instructed the jury on each of the prosecution's theories. The jury convicted defendant of first degree premeditated murder in a general verdict and made no findings that indicate which murder theory it relied upon. The court sentenced defendant to 25 years to life.

In his direct appeal, defendant asserted that the court erred by instructing the jury that it could find him guilty of premeditated first degree murder based on the natural and probable consequences doctrine. The argument had merit. While his appeal was pending, our Supreme Court decided *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), which held that "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles." (*Id.* at pp. 158–159.)[4] The error, the court stated, requires reversal unless the reviewing court concludes "beyond a reasonable doubt that the jury based its verdict on the legally valid theory that defendant directly aided and abetted the premeditated murder." (*Chiu, supra*, 59 Cal.4th at p. 167; see also *In re Martinez* (2017) 3 Cal.5th 1216, 1218.) Although we agreed with defendant that it was error to give the natural and probable consequences instruction, we held that the

_____

[4] *Chiu*'s rationale was extended in *People v. Rivera* (2015) 234 Cal.App.4th 1350 to preclude liability for first degree premeditated murder based on a conspiracy theory. (*Id.* at pp. 1356–1357; see *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1102 (*Lopez*), review granted Nov. 13, 2019, S258175.)

error was harmless "beyond a reasonable doubt" based on "strong evidence" that defendant "directly aided and abetted [the perpetrator] in the premeditated murder of [the victim]." (*Lewis*, *supra*, B241236 at p. 19.) We rejected defendant's other arguments and affirmed the judgment. (*Id.* at p. 20.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which, among other changes, amended section 188 to eliminate liability for murder under the natural and probable consequences doctrine. (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1092–1093.) The legislation also added section 1170.95, which establishes a procedure for vacating murder convictions that were based upon the natural and probable consequences doctrine and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675-6677.)

On January 7, 2019, defendant filed a petition in the superior court for resentencing under section 1170.95. In accordance with the statute, defendant identified the superior court's case number and the year of his conviction and stated that he had been "convicted of [first or second] degree murder pursuant to . . . the natural and probable consequences doctrine." Defendant further stated that, because of the changes made by Senate Bill No. 1437, he "could not now be convicted" because he "was not the actual killer" and "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree." Defendant also requested the court to appoint counsel for him.

4

On February 4, 2019, the trial court denied the petition without appointing counsel for defendant or holding a hearing. The court concluded that defendant was not eligible for resentencing because, based on our opinion in *Lewis*, he "would still be found guilty with a valid theory of first degree murder."

Defendant contends that the court erred by "going behind [the] allegations" in his petition and relying on our prior opinion to determine that he failed to make a prima facie showing of eligibility under Senate Bill No. 1437. For the reasons given below, we disagree.

## DISCUSSION

### A. *Senate Bill No. 1437 and Section 1170.95*

Senate Bill No. 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), p. 6674; see *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)[5] The legislation accomplished this in part by amending section 188 to require that, when the felony murder rule does not apply, a principal in the crime of murder shall act with malice aforethought, and that "[m]alice shall not be imputed to a person based solely

---

[5] Although *Chiu* abrogated the use of the natural and probable consequences doctrine to prove first degree premeditated murder, the doctrine was still applicable to second degree murder. (*Chiu, supra*, 59 Cal.4th at p. 166.)

5

on his or her participation in a crime."  (Stats. 2018, ch. 1015, § 2, p. 6675; *In re R.G.* (2019) 35 Cal.App.5th 141, 144.)[6]  As a result, the natural and probable consequences doctrine can no longer be used to support a murder conviction.  (*Lopez, supra*, 38 Cal.App.5th at p. 1103 & fn. 9; Stats. 2018, ch. 1015, § 1(f), p. 6674.)  The change did not, however, alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily "know and share the murderous intent of the actual perpetrator."  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; see *Chiu, supra*, 59 Cal.4th at p. 167 [a direct aider and abettor "acts with the mens rea required for first degree murder"].)  One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law.

Senate Bill No. 1437 also added section 1170.95, which permits a person convicted of murder under a natural and probable consequences theory to petition the court to have the murder conviction vacated and to be resentenced.  (§ 1170.95, subds. (a) & (e); Stats. 2018, ch. 1015, § 4, pp. 6675-6677).  Thus, section 1170.95 subdivision (a) provides that a person convicted of felony murder or murder under a natural and probable consequences theory may petition the trial court to have his or her murder conviction vacated or be resentenced on

---

[6] The new law also amended section 189 by adding a requirement to the felony-murder rule that a defendant who was not the actual killer or a direct aider and abettor must have been a "major participant" in the underlying felony who acted with reckless indifference to human life.  (Stats. 2018, ch. 1015, § 3, p. 6675.)  This aspect of the new law is not relevant here.

any remaining counts if the following conditions are met: (1) A charging document was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) The petitioner was convicted of first or second degree murder following a trial or an accepted plea; and (3) The petitioner could "not be convicted of first or second degree murder because of changes to Section[s] 188 or 189" made by Senate Bill No. 1437. (§ 1170.95, subd. (a).)

Under section 1170.95, subdivision (b), the petition must include: a declaration from the petitioner that he or she is eligible for relief under the statute, the superior court's case number and year of conviction, and a statement as to whether the petitioner requests appointment of counsel. (§ 1170.95, subd. (b)(1).) If any of the required information is missing and cannot "readily [be] ascertained by the court, the court may deny the petition without prejudice to the filing of another petition." (§ 1170.95, subd. (b)(2).)

Section 1170.95, subdivision (c) sets forth the trial court's responsibilities upon the filing of a complete petition: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

7

If the court issues an order to show cause, it shall hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d).) At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid*.)[7] Thus, "relief must be denied if the People establish, either based on the record of conviction or through new or additional evidence, that the defendant personally acted with malice." (*Lopez, supra*, 38 Cal.App.5th at p. 1114.)

If the court vacates the murder conviction, the court shall resentence the petitioner on any remaining counts or, if the defendant was not separately charged with the target offense that supported the prosecution's reliance on the natural and probable consequences doctrine (or the underlying felony in the case of felony-murder), "the petitioner's [murder] conviction shall be redesignated as the target offense or underlying felony for resentencing purposes." (§ 1170.95, subd. (e).)

### B. *Defendant Failed to Make a Prima Facie Showing That He Falls Within the Provisions of Section 1170.95*

Under section 1170.95, subdivision (c), the court was required to review defendant's petition and determine whether he made a prima facie showing that he "falls within the

---

[7] The record of conviction includes a reviewing court's opinion. (*People v. Woodell* (1998) 17 Cal.4th 448, 454–455; Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) ¶ 23:51(J)(2), p. 23-156.)

8

provisions of" the statute; that is, that he could not be convicted of first or second degree murder under the law as amended by Senate Bill No. 1437. (§ 1170.95, subds. (a)(3) & (c).) Because one can be convicted of murder even after the amendments if he or she directly aided and abetted the perpetrator of the murder, defendant was required to make a prima facie showing that he was not such a direct aider and abettor.

"A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.) Here, defendant stated in his petition the statutory elements for relief and averred, in essence, that he did not kill the victim or aid or abet the perpetrator of the murder with the intent to kill. Defendant contends that the court could look no further than his petition in evaluating his prima facie showing and the court therefore erred when it considered our opinion in his direct appeal. The Attorney General, by contrast, contends that the court could, and properly did, consider the record of defendant's conviction, including our prior opinion, in evaluating the sufficiency of the petition. We agree with the Attorney General.

Although no published decision has addressed the question whether the trial court can consider the record of conviction in evaluating the petitioner's initial prima facie showing under section 1170.95, subdivision (c), in analogous situations trial courts are permitted to consider their own files and the record of conviction in evaluating a petitioner's prima facie showing of eligibility for relief. Under section 1170.18, enacted by Proposition 47, for example, a person convicted of certain felonies that the Legislature subsequently redefined as misdemeanors may petition the court to recall his or her sentence and have

9

the felony conviction reclassified as a misdemeanor.  (See § 1170.18; *People v. Page* (2017) 3 Cal.5th 1175, 1179.)  The court undertakes an " 'initial screening' " of the petition to determine whether it states " 'a *prima facie* basis for relief.' " (*People v. Washington* (2018) 23 Cal.App.5th 948, 953.)  In evaluating the petition at that stage, the court is permitted to examine the petition "as well as the record of conviction." (*Id.* at p. 955.)

Similarly, under the Three Strikes Reform Act of 2012, known as Proposition 36, an inmate serving a third strike sentence may petition to be resentenced if, among other criteria, his or her sentence is for a crime that is not a serious or violent felony.  (§ 1170.126, subd. (e).)  The petitioner's initial burden is to establish "a prima facie case for eligibility for recall of the third strike sentence." (*People v. Thomas* (2019) 39 Cal.App.5th 930, 935.)  The trial court can determine whether the petitioner met that burden based in part on the record of the petitioner's conviction.  (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1341.)  And in habeas corpus proceedings, the court may summarily deny a petition based upon facts in its file that refute the allegations in the petition.  (*In re Serrano* (1995) 10 Cal.4th 447, 456.)

Allowing the trial court to consider its file and the record of conviction is also sound policy. As a respected commentator has explained: "It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for relief. For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine], . . . it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing." (Couzens et al., Sentencing Cal. Crimes, *supra,* ¶ 23:51(H)(1), pp. 23-150 to 23-151.) We agree with this view and, accordingly, conclude that the court did not err by considering our opinion in defendant's direct appeal in evaluating his petition.

In our prior opinion, we agreed with defendant that the trial court erred in instructing the jury on the natural and probable consequences doctrine. (*Lewis, supra,* B241236 at p. 19.) We explained that we were required to reverse the judgment " 'unless there is a basis in the record to find that the verdict was based on a valid ground.' " (*Ibid.*, quoting *Chiu, supra,* 59 Cal.4th at p. 167.) The only " 'valid ground' " available to the jury was the prosecution's alternative theory that defendant acted as a direct aider and abettor. We concluded that the evidence that defendant "directly aided and abetted

11

[the perpetrator] in the premeditated murder . . . is so strong" that the instructional error was harmless "beyond a reasonable doubt." (*Lewis, supra*, B241236 at p. 19) Stated differently, we held that the record established that the jury found defendant guilty beyond a reasonable doubt on the theory that he directly aided and abetted the perpetrator of the murder. The issue whether defendant acted as a direct aider and abetter has thus been litigated and finally decided against defendant. (See generally 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Defenses, § 208, pp. 683–684 [collateral estoppel applies in criminal cases].) This finding directly refutes defendant's conclusory and unsupported statement in his petition that he did not directly aid and abet the killer, and therefore justifies the summary denial of his petition based on the authorities and policy discussed above. (Cf. *People v. Karis* (1988) 46 Cal.3d 612, 656 [conclusory allegations in habeas petition "made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing"].)

Defendant points out that section 1170.95, subdivision (d)(3) permits the parties at the hearing on an order to show cause to "offer new or additional evidence," as well as rely on the record of conviction.[8] In light of this

_____

[8] Section 1170.95, subdivision (d)(3) provides: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges.

possibility, he contends that neither the trial court nor this court "can categorically state at this point, beyond a reasonable doubt, that any such evidence will not entitle [him] to resentencing." Even if we assume, without deciding, that section 1170.95 permits a petitioner to present evidence from outside the record to contradict a fact established by the record of conviction, defendant did not include or refer to such evidence in his petition.[9] The court, therefore, did not err in determining that defendant failed to make a prima facie showing that he "falls within the provisions" of the statute.

## C. *Defendant Was Not Entitled to Appointed Counsel*

Defendant argues that the court erred by denying his request to appoint counsel for him. We disagree.

The provision for the appointment of counsel is set forth in the second sentence of section 1170.95, subdivision (c), and does not, when viewed in isolation, indicate when that duty arises. When interpreting statutory language, however, we do not " 'examine that language in isolation, but in the context of the statutory framework as a whole.' " (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.) When the statutory framework is, overall, chronological, courts will construe the timing of particular acts in relation to other acts according

---

The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."

[9] Nor has defendant suggested the existence of such evidence in his briefs on appeal.

to their location within the statute; that is, actions described in the statute occur in the order they appear in the text. (See, e.g, *KB Home Greater Los Angeles, Inc. v. Superior Court* (2014) 223 Cal.App.4th 1471, 1477 [sequential structure of statutory scheme supports interpretation that acts required by the statutes occur in the same sequence]; *Milwaukee Police Association v. Flynn* (7th Cir. 2017) 863 F.3d 636, 643–644 [statute's chronological structure supports interpretation that statutory acts occur in the order they appear in the text].)

Under section 1170.95 the petitioner may file a petition to be resentenced under subdivision (a); the court determines whether the petition is complete under subdivision (b); the petitioner's prima facie showing of "fall[ing] within the provisions" of the statute, appointment of counsel, briefing, the prima facie showing of entitlement to relief, and the setting of an order to show cause are provided for in subdivision (c); the hearing on the order to show cause is addressed in subdivision (d); and the resentencing of the petitioner is addressed in the statute's concluding subdivision, subdivision (g). The statute is thus organized chronologically from its first subdivision to its last.

Given the overall structure of the statute, we construe the requirement to appoint counsel as arising in accordance with the sequence of actions described in section 1170.95 subdivision (c); that is, after the court determines that the petitioner has made a prima facie showing that petitioner "falls within the provisions" of the statute, and before the submission of written briefs and the court's determination whether petitioner has made "a prima facie showing that he or she is entitled to relief."

14

(§ 1170.95, subd. (c).)[10]  In sum, the trial court's duty to appoint counsel does not arise unless and until the court makes the threshold determination that petitioner "falls within the provisions" of the statute.  Because the trial court denied defendant's petition based upon his failure to make a prima facie showing that the statute applies to his murder conviction, defendant was not entitled to the appointment of counsel.

---

[10] It is not clear from the text of subdivision (c) what, if any, substantive differences exist between the "prima facie showing that the petitioner falls within the provisions of [section 1170.95]," which is referred to in the first sentence of subdivision (c), and the "prima facie showing that [the petitioner] is entitled to relief," referred to in the last sentence of the subdivision.  We need not decide this issue because the court properly concluded that defendant was neither within the provisions of the statute, nor entitled to relief, as a matter of law based on the record of conviction.

## DISPOSITION

The court's February 4, 2019 order denying defendant's petition for resentencing is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>.


                              ROTHSCHILD, P. J.

We concur:



          BENDIX, J.



          WEINGART, J.*

---

          * Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16